# Exhibit 10

# Declaration of M.G.

**Declaration of M█████ G████████**

I, M█████ G████████, declare as follows:

1. I make this declaration based on my own personal knowledge. If called as a witness, I will testify competently and truthfully to these matters.

2. I am a Plaintiff in the case, *Farmworker Association of Florida, Inc, et al v. DeSantis, et al.*, 1:23-cv-22655-RKA.

3. I am 31 years old. I live in ████████ Florida with my husband and our three United States citizen children. We have a nine-year-old son, a seven-year-old daughter, and an eighteen-month-old baby.

4. I came to the United States in approximately 2007, when I was fifteen years old. The first time I attempted to cross the border, I was stopped by immigration agents who fingerprinted me, took my picture, and sent me back across the border to Mexico. The second time I tried to enter the U.S., I crossed the border without being stopped.

5. My husband also came to the United States from Mexico as a young person. We met approximately ten years ago, when we were both working as farmworkers. We have been a couple since then, and we married in 2018. Since neither of us has family in Florida, my husband and I are each other's only family.

6. Both my husband and I come from humble backgrounds. We have always worked hard, because we want our children to have the safety and opportunities we never had growing up. Until we learned about the new law restricting immigrant travel, we usually moved for work based on the growing seasons, driving back and forth from Florida to the other states where we work. From about September or October until about May, we worked in Florida in the tomato fields. When Florida's tomato season ended each year, we moved our family north to Georgia for a few months and then to Tennessee, following the summer harvesting calendar in each place. This schedule allowed my husband and me to earn as much as possible, and it meant our children could remain at their school in Florida during the school year with as few disruptions as possible.

7. My husband has a driver's license, and we have a car. My husband normally drove us when we traveled from Florida to Georgia and Tennessee and back. I drove short distances and to take our children to appointments, for example. We both worked, and fortunately we knew and trusted people in those communities who would help us with childcare.

8. This year, after we learned about the new law that could make traveling into Florida a crime, my husband and I were too frightened to follow our normal routine. We decided not to go to Georgia for the summer harvest, because we were afraid we would never be

able to come back home to Florida. We have to stay in Florida because our home is here, and our children's school and medical providers are here too. Once the tomato season in Florida ended this year, we were both out of work. My husband struggled for about a month to find a new job. He finally found a landscaping job about an hour away from where we live. I have applied to several jobs, but none of them have offered me a position. Even if I could find a job, most of the businesses are far from our home, and I would have to be away from 7 or 8 am until 7 pm—the cost of childcare alone would make it impossible. When I worked as a farmworker, I had a schedule that allowed me to get home earlier.

9. The loss of income has been extremely difficult for our family. Instead of having two incomes, we now only have one. When we were both working, we could afford to buy things for our children. Now it is much more difficult to cover rent and bills every month, and I have to say no whenever our children ask me for anything. I met a woman through church who helps us by sometimes giving me diapers or a box of canned goods once a month, but a small box of food does not go very far. If it were not for this law, we would both be able to return to year-round farmwork and even to save money, and our family would be more financially stable.

10. The loss of income has been especially stressful as all our children have medical needs—my daughter has been diagnosed with a nodule on her lung, and she has to go to the doctor for monitoring every few months. My son has asthma, and he has asthma attacks triggered by the exhaust from the ████ plant in ████████ near where we live. We have to take him to the clinic or hospital when he has a bad asthma attack. The baby has anemia and has to go for regular check-ups at the pediatrician. On top of this, our families in Mexico are still counting on us for financial support. My husband's father has passed away, and so my husband has to support his mother, who has diabetes and needs money for her medical care. My family lives in an impoverished area of rural Chiapas and relies on help from us.

11. Because of the law, we are both afraid to drive, even within Florida. There is no public transportation system where we live, so driving or getting a ride are the only ways to get around. I worry that even if we are not actually driving across state lines into Florida, we could be stopped by a police officer if my husband is driving and the children and I are in the car. We would have no way to prove that we hadn't driven across state lines, and my husband could be arrested just for driving our children and me. We have both been driving as little as possible out of fear. Thankfully, my husband has a coworker who will take him to his landscaping job.

12. My daughter has an appointment next week in with the lung specialist in Boca Raton, which is about an hour and a half by car from where we live. I asked a car service if they would take us to the appointment, but it would be at least $200, and the driver would charge us for the wait time, too. There is just no way we can afford that. The only option

is for my husband to drive us to her appointment. I will be full of fear until we are all safely back home.

13. My greatest fear is that one or both of us could be arrested because of the transport law and separated from our young children as a result. I cannot imagine what it would do to our family if my husband is arrested because of this law, just for driving me somewhere. Our family will be destroyed. Our children are very close to their father, and he is my only family here. We would all be devastated if he is separated from us. Without a job, I would not be able to provide for and take care of our children by myself. It is even more terrifying to think of what might happen if the police arrested me, too. If we were both in jail because of driving, there would be no one to take care of our children.

14. As a fifteen-year-old girl, I had to make the journey to the United States to try to help my entire family back in Mexico. I survived some very difficult experiences on the journey and even after I arrived in the United States. I do not like to think or talk about what I lived through, and to this day I have not even told anyone about everything that happened to me, because it means reliving the worst parts of my life. I have been able to find some stability and happiness with my husband, who is a good man, and with the family we share together. I look at my children now, and my oldest is not so much younger than I was when I had to leave my parents behind. I never want my children to feel alone and scared the way I did. I especially worry about my daughter. I want to always be there to protect her.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___4___ day of August, 2023 in ▮▮▮▮▮▮▮▮, Florida.

## DECLARATION OF EDITH SANGUEZA

I, Edith Sangueza, hereby declare:

1. I am one of the attorneys representing Plaintiff M▆▆▆ G▆▆▆▆▆ in this action.

2. Ms. G▆▆▆▆▆ is a native Spanish speaker.

3. I am fluent in both English and Spanish.

4. I prepared a draft of Ms. G▆▆▆▆▆ August 4, 2023 declaration in English based on the facts stated in Spanish by Ms. G▆▆▆▆▆ during a telephone interview.

5. On August 4, 2023, I faithfully translated that draft declaration word-for-word into Spanish over the phone to Ms. G▆▆▆▆▆. Ms. G▆▆▆▆▆ confirmed the facts in the draft declaration, as I faithfully translated them word-for-word into Spanish, were true and correct. Ms. G▆▆▆▆▆ then signed the declaration under penalty of perjury.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed in Oakland, California, on August 4, 2023,

*[signature]*
EDITH SANGUEZA