IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| THE FARMWORKER ASSOCIATION OF FLORIDA INC., *et al.*,<br>　　　　Plaintiffs,<br>v.<br>RONALD D. DESANTIS, in his official capacity as Governor of the State of Florida, *et al.*,<br>　　　　Defendants. | Case No. 23-CV-22655-RKA |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO PROCEED ANONYMOUSLY AND TO FILE SUPPORTING EXHIBITS UNDER SEAL

Defendants provide no valid basis to deny Plaintiffs' request to proceed anonymously.[1] Defendants have not claimed that they would suffer any prejudice if the Court grants Plaintiffs' request. Defendants do not deny that anonymity is routinely granted in immigration-related cases—a practice the Eleventh Circuit has explicitly approved. And Defendants fail to meaningfully contest that Plaintiffs satisfy two of the three primary anonymity factors, because they are challenging government activity and admitting a desire to act contrary to Section 10.

The case for anonymity is overwhelming based on the remaining factor—the sensitivity of Plaintiffs' identifying information. Plaintiffs' immigration statuses, and those of their minor children and other relatives, implicate terrible details of trauma, child abuse, and other self-evidently sensitive matters. Courts regularly grant anonymity based on far less. And these details are central to Plaintiffs' claims, because their immigration statuses and histories—and those of their children and other close family members—are what trigger Section 10. Defendants also downplay the very real harassment and threats that Plaintiffs have already experienced because of their immigration statuses or their association with immigrants. In fact, Defendants themselves have exacerbated this danger, because the Governor's office—the most powerful official in

---

[1] As in the opening brief, "Plaintiffs" here refers only to the individual Plaintiffs. "Defendants" refers to the State Defendants who oppose Plaintiffs' motion. *See* Opp. 1.

1

Florida, with a national megaphone—has publicly branded Plaintiffs as "evil" "human smugglers."

The Court should grant the motion.

I. **Defendants have conceded they face no prejudice.**

Defendants rightly do not assert that they will face any prejudice or "fundamental unfairness," *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011), should Plaintiffs proceed anonymously, because there is none. Plaintiffs stand ready to provide Defendants with their full names subject to a protective order. Pls.' Mot. for Leave to Proceed Anonymously ("Mot."), Dkt. 29, at 15–16. Courts routinely recognize that disclosure subject to a protective order obviates any potential harm to defendants. *See, e.g.*, *Plaintiff B*, 631 F.3d at 1319; *Roe v. Aware Woman Ctr. for Choice*, 253 F.3d 678, 687 (11th Cir. 2001). But Defendants have not even asked for this information.

Defendants assert a generalized public interest in the openness of litigation. Defs.' Opp. ("Opp."), Dkt. 38, at 2. But the Eleventh Circuit has made clear that "[a] general plea for 'openness' is not convincing" when balanced against strong countervailing factors supporting a plaintiff's privacy right. *Plaintiff B*, 631 F.3d at 1318; *see also Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992). And here, the countervailing factors all counsel in favor of anonymity, as explained below.

Moreover, the public interest in plaintiffs' identities is at its nadir when plaintiffs mount a facial challenge to government action. *See Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (in purely legal challenges there is "an atypically weak public interest in knowing the litigant's identities" (cleaned up)); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("The assurance of fairness . . . is not lost when one party's cause is pursued under a fictitious name."); Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 HASTINGS L.J. 1353, 1378 (2022) ("[I]n facial challenges to government actions . . . the litigant's identity is generally not important to analyzing the substantive questions[.]"). Plaintiffs' redacted declarations provide sufficient information to the public about their lives, circumstances, and how Section 10 is affecting them.

2

In short, Defendants have conceded they will not face any harm, and they fail to identify any reason why the public needs to know Plaintiffs' specific identities.

**II.     State Defendants fail to articulate how any factor—much less the totality of factors—weighs against a stay.**

Defendants do not meaningfully contest two of the three principal anonymity factors, and they misconstrue the third. *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (stating that the first step in courts' analysis is to consider whether a party "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." (citing *Plaintiff B*, 631 F.3d at 1316)). Defendants do not contest that Plaintiffs are, in fact, challenging government activity, or that they are admitting an intent to engage in conduct—traveling to visit family or taking their sick children to the doctor—that is presumptively illegal under Florida's new law. Opp. 4, 7. And they misunderstand the sensitive information that would be revealed by making Plaintiffs' names public.

  A.  Challenging Government Activity

Defendants claim that the government activity prong has no weight. But in fact, courts do weigh this factor in favor of anonymity. *See Stegall*, 653 F.2d at 186; *S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, 823 F. App'x 862, 866 (11th Cir. 2020); *Eknes-Tucker v. Ivey*, No. 2:22-CV-0184-LCB-SRW, 2022 WL 19983530, at *2 (M.D. Ala. May 3, 2022). Generally, the only way for plaintiffs to block the application of an unconstitutional state law is by directly suing the government officials responsible for enforcement under *Ex parte Young. See, e.g.*, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Discouraging such claims by denying anonymity would give the government free reign to violate people's rights. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022) (one of the primary reasons for anonymity is where it "is necessary to forestall a chilling effect on future litigants who may be similarly situated"); *see also Megless*, 654 F.3d at 410

(same). Thus, "the plaintiff's interest in proceeding anonymously is considered particularly strong" when they challenge government activity. *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003).

B. <u>Admitting to Potentially Criminal Activity</u>

Defendants suggest that Plaintiffs' concerns about potential criminal prosecution are "overblown," because, they claim (in a single sentence without explanation), the statute *may* be interpreted not to criminalize some of their actions. Opp. 7 (asserting that Section 10 does not criminalize transporting "persons who have had interactions with the federal government"). Defendants thus improperly ask the Court to pre-judge the merits of this case by adopting a particular definition of "inspected." *See* Fla. Stat. § 787.07(01) (2023). The meaning of Section 10 is a merits consideration, which Plaintiffs cannot be required to win at this threshold stage. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (preenforcement challenge simply requires that the conduct is "arguably . . . proscribed by" the statute). Nor have Defendants made any effort to explain their position or square it with the vague text of Section 10. They make no attempt to explain which Plaintiffs' immigration histories mean they are safe from Section 10. And they ignore that multiple passengers driven by the Plaintiffs have not had any interactions with the federal government. Plaintiffs are clearly at "*risk* [of] criminal prosecution" because of their desire to drive family members and friends into Florida. *Plaintiff B*, 631 F.3d at 1316 (emphasis added). Defendants have not meaningfully disputed this factor.

C. <u>Matters of "Utmost Intimacy"</u>

Defendants misunderstand the "utmost intimacy" prong. Opp. 5–6. As an initial matter, Defendants are simply wrong that a person's immigration status can never qualify as an intimate matter. Just the opposite: As the Eleventh Circuit has explained, anonymity based on immigration status is routine, because in many cases, revealing people's immigration status "could lead to criminal prosecution, harassment, and intimidation," and "this reality has led federal courts . . . to permit the plaintiffs to proceed anonymously in immigration-related cases."

4

*Hispanic Interest Coal. v. Gov. of Alabama*, 691 F.3d 1236, 1247 & n.8 (11th Cir. 2012) (collecting cases). In fact, sensitivity in immigration matters is so great that the Federal Rules of Civil Procedure require privacy restrictions in immigration cases. Fed. R. Civ. P. 5.2(c) (limiting CM/ECF access only to parties in immigration cases); *see also* Hon. Wm. Terrell Hodges, Chair, Comm. on Court Admin. & Case Mgmt. of the Jud. Conf. of the U.S., *Privacy Concern Regarding Social Security and Immigration Opinions*, May 1, 2018, https://perma.cc/P6US-AEFE (recommending that judges not use litigants' full names in immigration opinions).

Because the sensitivities in this context are so evident, cases often do not analyze in detail requests for anonymity based on immigration status—including in previous cases in this Circuit holding state laws similar to Section 10 preempted. *See, e.g.*, *Ga. Latino All. for Hum. Rts. v. Gov. of Georgia*, 691 F.3d 1250, 1258–59 (11th Cir. 2012) (adult plaintiff with deferred action status proceeded under Doe pseudonym); *Cent. Alabama Fair Hous. Ctr. v. Magee*, 835 F. Supp. 2d 1165, 1169 (M.D. Ala. 2011), *vacated as moot sub nom. Cent. Ala. Fair Hous. Ctr. v. Comm'r, Ala. Dep't of Revenue*, No. 11-16114-CC, 2013 WL 2372302 (11th Cir. May 17, 2013) (adult undocumented plaintiffs proceeded under Doe pseudonyms);[2] *see also* Mot. 10 (collecting cases).[3]

Defendants are also wrong in their reductive claim that "utmost intimacy" always boils down to fears of stigma on the basis of sexuality or sexual abuse. Opp. 5. The leading case in this Circuit, *Doe v. Stegall*, concerned religion and school prayer. 653 F.2d at 186. Courts have granted requests for anonymity based on an individual's profession where that may be

---

[2] The court in *Central Alabama Fair Housing Center* granted the government defendants leave to seek the plaintiffs' identities if discovery were needed, but plaintiffs' identities would not be made public. *Cent. Ala. Fair Hous. Ctr. v. Magee*, Transcript of Prelim. Inj. Hearing at 6–7, Case No. 2:11cv982-MHT, Dkt. 68.

[3] Defendants are wrong that plaintiffs were granted anonymity in *Plyler* and *R.F.M.* solely because they were children. Opp. 6 n.6. The *Plyler* plaintiffs included adults, *Doe v. Plyler*, 458 F. Supp. 569, 571 n.1, 572 (E.D. Tex. 1978), *aff'd*, 628 F.2d 448 (5th Cir. 1980), *aff'd*, 457 U.S. 202 (1982), and the plaintiffs in *R.F.M.* were not children but young adults in their late teens and early twenties, just like two of the Plaintiffs here. *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 363 (S.D.N.Y. 2019).

controversial in their community, *see Eknes-Tucker*, 2022 WL 19983530, at *1 (physician), or based on past arrests and convictions, *see M.J. v. Jacksonville Hous. Auth.*, No. 3:11-CV-771-J-37MCR, 2011 WL 4031099, at *2–3 (M.D. Fla. Sept. 12, 2011) (contesting improper use of juvenile arrest records); *Doe v. Swearingen*, No. 18-24145-CIV, 2019 WL 95548, at *3 (S.D. Fla. Jan. 3, 2019) (status on the sex offender registry), or in family law cases, *see D.L. ex rel. Phan L. v. Bateman*, No. 3:12-CV-208-J-32JBT, 2012 WL 1565419, at *1–2 (M.D. Fla. May 2, 2012) (parental visitation and children's mental health were matters of "utmost intimacy").

Moreover, in addressing this factor, Defendants completely ignore that Plaintiffs do not seek anonymity simply to avoid public disclosure of their immigration statuses, but because of what their particular statuses reveal about past trauma and abuse, and that of their minor children and other relatives. As explained in their declarations, several Plaintiffs or their close family members (including minor children) have applications for immigration relief pending that are based on past child abuse or neglect, or based on future severe harm to their close family members. *See, e.g.*, M.M. Decl. ¶ 5 (discussing pending application for cancellation of removal based on harm to children); C.A. Decl. ¶¶ 8–9, 12 (discussing grandson's pending petition for Special Immigrant Juvenile Status and his family history of past abandonment, neglect, and involvement with the child welfare system). Disclosure of Plaintiffs' immigration histories will reveal intimate details about their own or their loved ones' past trauma—including, in the case of C.A. and her grandson, precisely the kind of information about the "rights of illegitimate children or abandoned families" that Defendants agree automatically qualifies as a matter of utmost intimacy. Opp. 5 (quoting *Southern Methodist Univ. Ass'n v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979)). Because certain forms of humanitarian immigration relief are directly tied to such intimate and difficult matters as abandonment, abuse, and other extreme hardship, federal immigration laws themselves specifically provide privacy protections for such applications. *See R.F.M.*, 365 F. Supp. at 371 (discussing privacy protections in the Rules of Civil Procedure and INA). Defendants notably do not offer any response to these extremely sensitive matters that would be revealed to the public if Plaintiffs' identities were disclosed.

6

Defendants also claim that Plaintiffs' immigration statuses are not relevant because they are drivers, not passengers, and Section 10 is triggered by the immigration status of passengers. Opp. 5. This ignores that many Plaintiffs *are* passengers. *See* Compl., Dkt. 1, ¶¶ 40–59.

And regardless of whether they are drivers or passengers, revealing Plaintiffs' identities will necessarily reveal the identities and immigration statuses of their minor children, other family members, and associates.[4] *See Massachusetts Inst. of Tech.*, 46 F.4th at 71 (surveying caselaw and identifying "paradigm" of "cases in which identifying the would-be Doe would harm innocent non-parties." (cleaned up)). This is a serious concern for all Plaintiffs. Plaintiffs M.M., M.G., and G.D.L. are the parents of young children. M.M. is a single mother of five, and M.G. and G.D.L. have three children, including a baby and a seven-year-old daughter who requires specialist pediatric pulmonary care. M.M. Decl. ¶ 3; M.G. Decl. ¶¶ 3, 11–12; G.D.L. Decl. ¶¶ 3, 9. Identifying D.M. and A.C.—M.M.'s teenage children—would necessarily identify their younger siblings. D.M. Decl. ¶ 3; A.C. Decl. ¶ 3. C.A., a grandmother in her seventies who fled an oppressive socialist regime in Nicaragua, is the sole caretaker for her teenage grandson. Having lost a son to suicide, she is very concerned about her grandson's anxiety and mental health should his identity be revealed through his connection with her. C.A. Decl. ¶¶ 4, 6, 10–14. A.M., J.L., and R.M. work and live in small communities along the Florida-Georgia border. If their identities are made public, their family members' and associates' necessarily will be as well. J.L. lives with her brother, a non-party who is also undocumented, and her two young children, and R.M. lives with his wife, who is also elderly. J.L. Decl. ¶¶ 3, 7; R.M. Decl. ¶ 2. A.M. runs a nonprofit and is responsible not just for herself but her employees and community members. A.M. Decl. ¶ 3. In the past, A.M. and R.M. have had direct experience with white supremacist groups including the Ku Klux Klan and the "Brotherhood," and A.M. has been

---

[4] For this very reason, in cases where parent and child plaintiffs sue together, courts routinely grant the parent plaintiffs anonymity, because requiring them to sue under their full name necessarily reveals their child's name. *See, e.g.*, *D.L. ex rel. Phan L.*, 2012 WL 1565419, at *2; *supra* note 3 (discussing use of pseudonyms in *Plyler*).

7

directly threatened by the Sherriff's Department in her town because of her advocacy for the immigrant community. A.M. Decl. ¶¶ 4–6, 8; R.M. Decl. ¶¶ 6–7. Plaintiffs' concerns, not just for themselves but also their family members, are not speculative. *See infra* pp. 8–9 (describing past experiences of threats). All Plaintiffs have a pressing need to maintain anonymity in order to protect their family members and loved ones.

In sum, Defendants fail to identify a single factor that weighs against granting Plaintiffs' request for anonymity. And considering all factors together, anonymity is clearly warranted.

### III. The totality of the remaining circumstances weighs in favor of anonymity.

Defendants do not actually engage with the realities of Plaintiffs' circumstances. Instead, they lash out by accusing Plaintiffs of unrelated criminal behavior. *But see Arizona v. United States*, 567 U.S. 387, 404 (2012) (explaining that working without authorization is not a crime). Defendants' accusations are beside the point. Plaintiffs are seeking to proceed anonymously to protect matters of utmost intimacy and avoid harassment and violence, and they satisfy every relevant factor. Defendants' accusations could have been leveled at countless other undocumented plaintiffs, but as explained above, they are typically granted anonymity.

Defendants next claim that Plaintiffs have not identified any "real threat of physical harm" as a result of bringing this suit. Opp. 9–12 (quoting *Chiquita Brands*, 965 F.3d at 1247). But *Chiquita Brands* did not hold that a "real threat of physical harm" is *required*, it simply noted that such a threat is (unsurprisingly) a factor for courts to consider. 965 F.3d at 1247. Courts frequently grant anonymity based on things other than a specific threat of physical violence, including the threat of bullying and harassment, or the risk of other physical or mental harm. *See Doe v. Neverson*, 820 F. App'x 984, 984–85 (11th Cir. 2020) (reversing denial of leave to proceed anonymously where Doe plaintiff feared "online bullying and harassment"); *Massachusetts Inst. of Tech.*, 46 F.4th at 71 (identifying "paradigm" of "would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)."); *cf. Chiquita Brands*, 965 F.3d at 1247–48 (finding no abuse of discretion where, in a MDL involving hundreds of plaintiffs, the district court concluded that

8

certain plaintiffs had not shown specific evidence of harm warranting anonymity, particularly compared to the great majority of plaintiffs who proceeded under their names without facing any threats). Courts also weigh past experiences of threats unconnected to litigation that inform plaintiffs' reasonable concern about future threats. *See Eknes-Tucker*, 2022 WL 19983530, at *1–2; *Swearingen*, 2019 WL 95548, at *5. Plaintiffs' concerns about threats of harassment and violence are real, as nearly all of them have experienced discrimination, slurs, and/or harassment in the past based on their actual or perceived immigration status or national origin, or their affiliation with immigrant communities. *See, e.g.*, A.C. Decl. ¶¶ 8–9 (bullied by a stranger at night and by customers when he speaks Spanish); M.M. Decl. ¶ 8 (told to "go back to my country."); R.M. Decl. ¶¶ 6–7 (threatened with arrest by police for criticizing an ICE raid and harassed for speaking Spanish); A.M. Decl. ¶ 4 ("Wetback, go back to Mexico.").

Finally, Defendants themselves have exacerbated the risks to Plaintiffs of proceeding publicly. As soon as this lawsuit was filed, the Office of Governor DeSantis publicly labeled Plaintiffs as "human smugglers," whose "evil predations" his office is fighting. Mot. 1–2, 10. In reality, Plaintiffs are parents, grandparents, workers, religious leaders, and members of their communities. Defendant's accusation makes anonymity all the more necessary here. The chief executive publicly branding Plaintiffs with the "reviled" label of human smugglers deepens the risk they would face if their identities are made public. *Swearingen*, 2019 WL 95548, at *4–5 (granting anonymity for this reason to plaintiffs on sex offender registry without any showing of specific threats connected to litigation). The most powerful official in the state, who has a national platform, is telling the public that Plaintiffs are evil, abusive smugglers who prey on innocent people and must be stopped. The danger that this places the Plaintiffs in is self-evident, and that alone warrants protecting their identities. Plaintiffs must be allowed to proceed anonymously in order to protect their privacy rights and safety.

## IV.   Defendants' cases are inapposite.

Defendants cite several cases denying anonymity, *see* Opp. 5–6, but none of them raised the compelling factors present here. None them involved the kind of highly sensitive details that

9

are tied to Plaintiffs' immigration histories and statuses. *See supra* pp. 6–7. Most did not involve attempts to protect the identities of children, especially children with histories of neglect, trauma, and suicidality. None involved past exposure to threats and harassment, and some did not even allege any danger. In many, the plaintiffs' immigration statuses were irrelevant to the claims and were therefore unlikely to be at issue in the case. And in some, plaintiffs were trying to shield their identities from *defendants*, not just the public. *See Vicente v. Barnett*. No. CV 05-157 TUC JMR, 2005 WL 8160475, at *2 (D. Ariz. Oct. 3, 2005) (immigration status unconnected to tort actions); *Doe I v. City of Alabaster, Alabama*, No. 2:11-CV-3448-VEH, 2012 WL 13088882, at *5 (N.D. Ala. Apr. 26, 2012) (claims were not tied to immigration status, plaintiffs "ha[d] not even alleged . . . any . . . danger," and they sought to keep their identities secret from defendants); *Day v. Sebelius*, 227 F.R.D. 668, 679 (D. Kan. 2005) (agreeing that "undocumented alien status is a sensitive matter," but plaintiffs were "not challenging a criminal statute," and had not identified any prior harassment or threats directed at them); *Doe v. Merten*, 219 F.R.D. 387, 388–89, 393–94 (E.D. Va. 2004) (no sensitive information tied to immigration status and no prior harassment or threats); *Hispanic Fed'n v. Byrd*, 4:23-cv-00218-MW-MAF, Dkt. 78 (N.D. Fla. July 17, 2023) (no sensitive information tied to immigration status, no prior threats or harassment, no children at issue). Here, by contrast and as Defendants acknowledge, Plaintiffs' immigration statuses will be key given Defendants' proposed gloss on "inspection." Opp. 7. Unlike in the cases cited by Defendants, Plaintiffs seek to shield specific and clearly intimate details of their lives, they seek to protect their children's identities and intimate details, they have faced threats and harassment in the past, and Defendants do not even try to claim that they would be prejudiced or disadvantaged in any way. These cases thus have nothing to say about the propriety of anonymity under the unique circumstances of this case.

## CONCLUSION

The Court should grant Plaintiffs' request for leave to proceed anonymously.

Dated:  September 5, 2023

Respectfully submitted,

/s/ Anne Janet Hernandez Anderson
*On behalf of Attorneys for Plaintiffs*

Evelyn Wiese (CA Bar No. 338419)*
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 2201
Miami, FL 33166
(305) 573-1106
ewiese@aijustice.org

Katherine Melloy Goettel (IA Bar No. 23821)*
Emma Winger (MA Bar No. 677608)*
AMERICAN IMMIGRATION COUNCIL
1331 G St. N.W., Suite 200
Washington, DC 20005
(202) 507-7552
kgoettel@immcouncil.org
ewinger@immcouncil.org

Katherine H. Blankenship (FL Bar No. 1031234)
Daniel B. Tilley (FL Bar No. 102882)
ACLU Foundation of Florida, Inc.
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2700
kblankenship@aclufl.org
dtilley@aclufl.org

Amien Kacou (FL Bar No. 44302)
Maite Garcia (FL Bar No. 99770)
ACLU Foundation of Florida, Inc.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
(813) 288-8390
akacou@aclufl.org
mgarcia@aclufl.org

Anne Janet Hernandez Anderson (FL Bar No. 0018092)
Paul R. Chavez (FL Bar No. 1021395)
Christina Isabel LaRocca (FL Bar No. 1025528)
Felix A. Montanez (FL Bar No. 0102763)
Cassandra Charles (NY Bar No. 5540133)*
SOUTHERN POVERTY LAW CENTER
2 South Biscayne Blvd., Suite 3750
Miami, FL 33131-1804
(786) 347-2056
aj.hernandez@splcenter.org
paul.chavez@splcenter.org
christina.larocca@splcenter.org
felix.montanez@splcenter.org
cassandra.charles@splcenter.org

Cody Wofsy (CA Bar No. 294179)*
Spencer Amdur (CA Bar No. 320069)*
ACLU Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org
samdur@aclu.org

Omar Jadwat (NY Bar No. 4118170)*
Edith Sangueza (NY Bar No. 5694534)*
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
ojadwat@aclu.org
irp_es@aclu.org

*Attorneys for Plaintiffs*
*\*Admitted Pro hac vice*

11

## **CERTIFICATE OF SERVICE**

I hereby certify on September 5, 2023, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system. I further certify that a true and correct copy of the foregoing was served via mail to Defendants at the addresses contained in the service list, below.

/s/ Anne Janet Hernandez Anderson
*On behalf of Attorneys for Plaintiffs*

James H. Percival
Henry C. Whitaker
Natalie P. Christmas
Joseph E. Hart
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
*Counsel for Attorney General Ashley Moody and Statewide Prosecutor Nicholas Cox*

Ryan D. Newman
Nicholas J.P. Meros
Samuel F. Elliott
Executive Office of the Governor
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL 32399
(850) 717-9310
(850) 488-9810 (fax)
ryan.newman@eog.myflorida.com
nicholas.meros@eog.myflorida.com
samuel.elliott@eog.myflorida.com
*Counsel for Governor Ron DeSantis*

Arthur I. Jacobs
Jacobs, Scholz & Wyler, LLC.
961687 Gateway Blvd., Suite 201-I
Fernandina Beach, FL 32034
(904) 261-3693
buddy@jswflorida.com
*Counsel for Defendant State Attorneys for the 1st-3rd and 5th-20th Judicial Circuits*

Melissa Nelson, State Attorney
Fourth Judicial Circuit
Ed Austin Building
311 West Monroe Building
Jacksonville, FL 32202
mwnelson@coj.net