IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| THE FARMWORKER ASSOCIATION OF FLORIDA INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RONALD D. DESANTIS, in his official capacity as Governor of the State of Florida, *et al.*, <br><br> Defendants. | Case No. 23-CV-22655-RKA |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS'
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Defendants have no valid defense of Section 10.  They propose a narrowing construction of "inspected," albeit with strikingly little analysis.  But their construction has no impact on Plaintiffs' preemption claims, which do not turn on the meaning of that word.  And their proposed gloss is far too uncertain to address the statute's vagueness and threat of imprisonment.

Plaintiffs' standing is clear.  Multiple Plaintiffs have canceled specific plans to visit family in other states because of Section 10.  Defendant's definition of "inspected" has no effect on standing, where Plaintiffs only need to show that their conduct "arguably" falls within the statute.  All of the Plaintiffs easily clear that low threshold, and some unquestionably fall within Defendants' interpretation.  Defendants' many standing arguments quickly fall apart.

Defendants' main preemption argument is that even though Section 10 does exactly what the Eleventh Circuit rejected—bars the transport of immigrants—it escapes preemption because it could *also* bar a tiny category of U.S. citizens from entering Florida.  But States cannot achieve a preempted effect just by adding a slight additional regulation.  And applying Section 10 to U.S. citizens would be blatantly unconstitutional, so in reality the statute only applies to immigrant transport.  Defendants barely respond to Plaintiffs' other preemption claims.  They offer no real cure to the statute's hopeless vagueness.  And their remaining arguments are equally meritless.  An injunction is warranted.

## I. Plaintiffs Have Standing.

To grant the preliminary injunction, only one plaintiff needs to have standing.  *Pelphrey v. Cobb Cty.*, 547 F.3d 1263, 1280 (11th Cir. 2008).

Defendants try to defeat standing by narrowly construing Section 10 such that it would not regulate some of the Plaintiffs.  Opp. 3-5, 6, 9.  Defendants' construction is dubious on the merits, *infra* Part III, and it would still expose multiple plaintiffs to prosecution.  But for standing purposes, it is irrelevant, because Plaintiffs need only show that their "conduct is *arguably* proscribed" by Section 10.  *West Virginia v. Dep't of Treasury*, 59 F.4th 1124, 1137-38 (11th Cir. 2023) (emphasis added) (defendant's narrowing construction could not defeat standing).  That makes sense, because Defendants' ad hoc interpretation in a single brief does not even bind *them*, much less the state courts, prosecutors, and police who will enforce Section 10, and so it cannot meaningfully protect Plaintiffs.  *Cf. Stenberg v. Carhart*, 530 U.S. 914, 940-41 (2000).  As explained below, every Plaintiff's conduct is "at least arguably prohibited" by Section 10.  *Dream Defenders v. DeSantis*, 553 F. Supp. 3d 1052, 1077 (N.D. Fla. 2021).

Defendants also suggest that a few of the Plaintiffs are admitting unrelated illegal activity.  But undocumented plaintiffs can protect their rights in court just like anyone else, regardless of whether they must work or drive to feed their families.  *See, e.g.*, *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013); *Patel v. Quality Inn S.,* 846 F.2d 700, 706 (11th Cir. 1988); *Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1236–38 (S.D. Fla. 2014).  Given these flaws, Defendants fail to defeat *any* Plaintiff's standing, much less all.

The individual Plaintiffs all have standing.  C.A., M.M., A.C. and their loved ones are separated from family in other states, and Defendants do not contest the specificity of their travel plans.  *See* C.A. Decl. ¶ 6-7; M.M. Decl. ¶ 7-11; A.C. Decl. ¶ 6.  As to these Plaintiffs, Defendants only assert their narrowing construction, Opp. 11, which as explained cannot defeat standing.  C.A.'s grandson has no lawful status, and his pending petition has not been resolved, Decl.. ¶ 5, so he at least arguably has not already "been inspected" under Section 10.  M.M.'s daughter likewise has a pending application that has not been decided yet.  Decl. ¶ 10.  And A.C.'s mother and sister have pending immigration cases that have yet to be adjudicated.  Decl. ¶ 7.  None of those situations constitutes a completed "inspection" as the term is generally used in the INA, or in the dictionary Defendants cite, or in the ordinary sense of the word.  These facts clearly meet the threshold for pre-enforcement standing.

Likewise, A.M. regularly transports people into Florida as part of her job and has done so "dozens of times" in recent years.  Decl. ¶ 5.  R.M. transports people into Florida on a regular basis and continues to receive requests for transport.  Decl. ¶ 11-15.  J.L. regularly transports people into Florida as part of her work.  Decl. ¶¶ 8-11.  All three regularly have passengers "who have never had any contact with immigration authorities."  A.M. Decl. ¶ 5; R.M. Decl. ¶ 11; J.L. Decl. ¶ 9.  And all three are refraining from further transport because of Section 10.  A.M. Decl. ¶ 14; R.M. Decl. ¶ 15; J.L. Decl. ¶ 12.  Defendants nitpick the specificity of their travel plans, but the Eleventh Circuit has held that it suffices for standing if a person engaged in a regulated activity "on a regular basis in the past and expects to do so in the near future," especially if, like here, the activity is part of their work.  *Houston v. Marod*, 733 F.3d 1323, 1340 (11th Cir. 2013).

The other Plaintiffs' standing is just as clear.  It is certainly arguable that D.M., who has no lawful status and only an unadjudicated DACA application, has not "been inspected," and therefore her family and any other driver risks mandatory detention and criminal penalties up to

2

five years in jail for bringing her back to Florida. Decl. ¶ 4; Fla. Stat. § 787.07(1), (7). Given those penalties, it is not speculative that Section 10 will prevent her and J.L.—who Defendants concede falls within Section 10—from receiving transport. G.D.L. and M.G. likewise have standing because they regularly travel across state lines, and Defendants do not dispute that their status would trigger Section 10. G.D.L. Decl. ¶ 4-5; M.G. Decl. ¶ 4, 6.

FWAF easily has associational standing. It only needs one member with standing, *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020), and it identified *seven*, five of whom "regularly" transport undocumented people into Florida and two of whom are undocumented passengers. FWAF Decl. ¶¶ 24-29. The passengers entered without inspection and at least arguably have not been inspected since, including one who has never encountered federal officials. *Id.* ¶¶ 25, 26, 29. Defendants complain that FWAF did not identify these members by name. Opp. 5. But "[i]n the Eleventh Circuit, associational plaintiffs are not required . . . to name individual plaintiffs" as long as they identify specific members with standing. *Suncoast Waterkeeper v. City of Gulfport*, 2017 WL 1632984, *7 (M.D. Fla. May 1, 2017) (citing *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999)).[1] Especially at this early stage of the case, FWAF "need not identify the affected members by name." *Ass'n of Am. Physicians & Surgeons v. Sebelius*, 901 F. Supp. 2d 19, 31 (D.D.C. 2012) (collecting cases).[2]

## II. Section 10 Is Preempted.

### A. Plaintiffs Have an Equitable Cause of Action.

Plaintiffs have an equitable cause of action to challenge Section 10 as preempted. The Supreme Court and Eleventh Circuit have confirmed the "power of federal courts of equity" to

---

[1] Plaintiffs will provide the relevant names to Defendants as soon as they agree to a protective order, *see* Doe Motion, Dkt. 29 at 15, but Defendants have never asked. FWAF remains ready to provide the name of a member to Defendants in addition to JL, who is a member of FWAF.
[2] FWAF also has organizational standing. PI Br. 4, 18. It has already lost members and will likely continue to as the government enforces Section 10. FWAF ¶ 39. FWAF has been inundated with inquiries related to travel between Florida and other states, and has therefore had to reassign trained volunteers from other projects to help answer these questions. *Id.* ¶¶ 32-33, 35. FWAF has also recruited and trained new volunteers and disseminated new materials on Section 10. *Id.* ¶¶ 33-34. To do so, FWAF employees have had to work longer hours and dedicate more focus to the fallout from Section 10, diverting resources from its regular projects and programming. *Id.* ¶¶ 11, 31-38. Defendants point to other effects of SB 1718, Opp. 8, but FWAF's members are chiefly concerned with the impediments Section 10 imposes on travel into Florida. The nature of their farmwork is to migrate each season, and so Section 10 stands out as particularly harmful to their occupation. *Id.* ¶¶ 6. 39.

3

"issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015) (courts "regularly consider[]" such challenges); *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (collecting cases); *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1260-62 (11th Cir. 2012) (same); *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275-76 (11th Cir. 2018).

Defendants do not dispute this general principle. Rather, they argue that Congress has displaced equitable relief here by giving federal officers the power to prosecute criminal violations of 8 U.S.C. § 1324. Opp. 14. But Plaintiffs are not seeking to enforce § 1324 and its criminal prohibitions. They are instead seeking to enjoin a law that is field preempted. *See* PI Br. 6 (listing multiple statutes that occupy the field). Congress has provided no specific method for enforcing preemption claims which could displace the Court's equitable authority. Such displacement cannot be inferred absent an "express provision of [a] method of enforcing a substantive rule." *Armstrong*, 575 U.S. at 328 (quotation marks omitted). None exists for the rule that Plaintiffs are seeking to enforce.

Defendants' argument proves too much, because federal officials are empowered to enforce *all* of the statutes that formed the basis for preemption in *Arizona*, *Alabama*, *Georgia* and countless other immigration cases. *See, e.g.*, 8 U.S.C. § 1306 (registration); 8 U.S.C. §§ 1226(a), 1357(a) (arrests); Opp. 14 (relying on 8 U.S.C. § 1103). Under Defendants' theory, private parties could never challenge a preempted immigration law.

### B. Section 10 Is Field and Conflict Preempted.

Defendants' preemption defense fails. At the outset, there is no presumption against preemption where immigration is implicated. *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012). And Defendants' limiting construction of Section 10 has nothing to do with Plaintiffs' preemption claims, because the claims do not turn on the meaning of "inspected."[3]

<u>Immigrant transport</u>. Defendants concede that, under binding precedent, states may not enact any laws that regulate the "unlawful transport and movement of aliens." *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1264 (11th Cir. 2012); Opp. 15. And Defendants do not seriously dispute that Section 10 does exactly that, by barring people from "transport[ing]" those who "entered the United States in violation of law." Fla. Stat. § 787.07(1).

---

[3] The one exception is Plaintiffs' final preemption claim, PI Br. 12-13, but as explained below, Defendants' construction is too weak to save the statute, *infra* at Part III..

4

Defendants' main defense is that Section 10 is not preempted because it *also* applies to the miniscule category of U.S. citizens who enter the country illegally. Opp. 15-16.[4] But Florida cannot do the precise thing that the Eleventh Circuit has foreclosed just by adding some marginal additional regulation outside the preempted field. By occupying the field, Congress "foreclosed *any* state regulation in this area," because letting Florida regulate immigrant transport "in any respect" would disrupt "the careful framework Congress adopted." *Arizona*, 567 U.S. at 401-402 (emphasis added). Extending the regulation to a few theoretical U.S. citizens does nothing to eliminate this disruption, nor the "specific conflicts" that "underscore the reason for field preemption"—namely, that regulating immigrant transport allows Florida to impose penalties inconsistent with the federal scheme and prosecute even where "prosecution would frustrate federal policies." *Id.* at 402-03.

Defendants make no attempt to explain why extending Section 10 to U.S. citizens should change the underlying preemption dynamics. Field preemption here gives Plaintiffs "a federal right to be free from any other [immigrant transport] requirements" beyond what federal law imposes. *Murphy v. NCAA*, 138 S. Ct. 1461, 1480-81 (2018) (explaining field preemption). Florida cannot take away that right just because it also regulates other people's transport—especially if the prospect of actually *applying* that additional regulation is imaginary as a practical matter.

Defendants unsurprisingly cite no case endorsing the idea that a state is free to engage in preempted regulation as long as it slightly extends the regulation to other matters. To the contrary, courts consistently invalidate state laws that use "'an indirect but wholly effective' means of achieving a preempted goal." *Cal. Restaurant Ass'n v. City of Berkeley*, 65 F.4th 1045, 1055-56 (9th Cir. 2023) (citation omitted) (collecting cases). Defendants cannot "avoid preemption by shifting their regulatory focus" to inspection, while in practice achieving the same regulation of immigrant transport that Congress has preempted. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 652 (2013).[5]

---

[4] Defendants suggest Section 10 also extends to "legally present" immigrants, Opp. 15, but that contradicts their limiting construction, and regardless, slight extensions do not affect preemption.
[5] The cases Defendants cite are far afield. *Kansas v. Garcia* did not address the field of immigrant transport, and the plaintiffs there were unable to even "identify the [relevant] field." 140 S. Ct. 791, 804-06 (2020); *see* PI Br. 6 n.5. Plaintiffs make no argument about the "label[]

5

Defendants' argument fails for a second reason as well. Extending Section 10 to U.S. citizens would blatantly violate the "right to travel." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). "The constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal Union." *United States v. Guest*, 383 U.S. 745, 757 (1966); *see Edwards v. California*, 314 U.S. 160, 166-67 (1941) (invalidating state law that "restrain[ed] the transportation of persons" across state lines). Because Section 10 has no constitutional application to U.S. citizens, in reality it only applies to the transport of immigrants.

Defendants thus cannot pretend that Section 10 is about anything but immigration. The bill that enacted Section 10 is titled "An act relating to immigration." SB 1718 preamble; *see* Opp. 4 (relying on "the statute's title"). Literally every provision in the bill regulates "unauthorized immigrants." *See generally* SB 1718. *Id.* And every statement by the enacting officials made clear that "the focus of this bill" was to "fight illegal immigration." PI Br. 2. Despite these facts, Defendants would have the Court believe that the Florida Legislature was looking to address the transport of U.S. citizens into Florida. That is just not credible.

<u>Federal removal scheme</u>. Defendants do not seriously contest that Section 10 "prevent[s] undocumented immigrants from entering and living in Florida." Opp. 16 n.11; *supra* (clear purpose to target immigrants). That alone is enough to enjoin it under *Alabama*, which held that states cannot take measures to exclude undocumented immigrants. PI Br. 8-9. Defendants try to downplay this claim by addressing it only in a footnote, but the weakness of their response underscores that this claim is independently fatal to Section 10.

Defendants bizarrely suggest that Section 10 only "indirectly" "discourage[s]" undocumented immigrants "from entering the State." Opp. 16 n.11 (quotation marks omitted). But Section 10 flatly prohibits their transport into the state, and criminalizes providing it. Even more than in *Alabama*, Florida has provided "that unlawfully present aliens cannot be tolerated within its territory." 691 F.3d at 1295. Defendants also maintain that *Alabama* does not apply because Section 10 does not "prohibit[] *all* unlawfully present aliens from living within the State." Opp. 17 n.11 (emphasis added). But *Alabama*'s analysis did not turn on the proportion

---

'harboring.'" Opp. 16 (quoting *Keller v. City of Fremont*, 719 F.3d 931, 943 (8th Cir. 2013)). And *Schneidewind* and *Oneok* simply held that that states could apply their most general, economy-wide antitrust and securities laws to natural gas companies, particularly where Congress had explicitly "limit[ed]" any preemption.

6

of immigrants who were excluded.  It held that the power to exclude is "*exclusively* federal," 691 F.3d at 1293-95 (emphasis added), meaning states have no authority at all in this domain.  Florida cannot dictate which subset of immigrants can enter its territory.

<u>State-created classification</u>.  Defendants do not genuinely contest this claim.  They respond in a single sentence that this claim "misread[s] the statute," Opp. 15 n.10, with no further explanation.  That cryptic response is not enough to raise a defense.  *See Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 n.16 (11th Cir. 2021).

Nor is the sentence responsive to Plaintiffs' claim, which is that Section 10 impermissibly creates a new immigration classification—people who have been "inspected" "since" entry—that does not exist in federal law.  PI Br. 9-12.  That claim does not depend on how one interprets that category.  The point is that however state courts interpret the classification, it does not exist in the INA, as Defendants concede explicitly.  Opp. 4 n.4.  Defendants also do not contest the legal principle that states cannot create new immigration classifications.  And they do not dispute that, in practice, Section 10 almost exclusively regulates the transport of immigrants.  This presents yet another independent reason to enjoin Section 10.

<u>Expansion of § 1324</u>.  Defendants do not dispute that Section 10 extends far beyond § 1324 and criminalizes transport for the full array of normal activities that are essential for daily life.  Nor do they dispute that *Alabama* and *Georgia* both found conflict preemption on that ground.  PI Br. 7-8.  It asserts that Section 10 "does not directly regulate the transportation of illegal aliens," Opp. 17, but its clear terms do exactly that, and Defendants make no real attempt to explain otherwise.  Perhaps their point is that Section 10 does not *exclusively* regulate immigrants, because it could also theoretically apply to a U.S. citizen.  But as explained, that would be unconstitutional, and anyway slight extensions do not magically eliminate preemption.

<u>State determinations of status</u>.  Defendants agree that Section 10 requires state officials to independently determine whether a noncitizen's immigration history shows that they have been "inspected."  Opp. 17-18.  Defendants argue that inspection does not implicate "a person's immigration status."  Opp. 17-18.  But entry without inspection is a key element of numerous immigration status determinations.  *See e.g.*, 8 U.S.C. §§ 1255(i)(1)(A)(i), 1182(a)(6)(A)(i).  Defendants also maintain that inspection determinations are "not complex," Opp. 18, but the opposite is often true, AILA Amicus 9-17.

7

### III.   Section 10 Is Unconstitutionally Vague.

Defendants' cursory vagueness response is notable for what they do not contest.  They confirm that the phrase "inspected by the Federal Government" appears on its face to reference a term of art used in federal law. Opp. 3-4; *Sullivan v. Stroop*, 496 U.S. 478, 483 (1990) (rejecting ordinary meaning where phrase "appears to have become a term of art").  At the same time, they do not contest that federal law provides no coherent understanding of what "inspected…since" entry means—and in fact federal law suggests that many people authorized to be in the United States have not been "inspected."  *See* PI Br. 14; AILA Amicus 4-18.  They concede that the Florida legislators who enacted Section 10 had no logical or consistent understanding of what the provision means.  *See* PI Br. 14-15; Opp. 18.  These concessions are fatal to Defendants' defense of the law.  Floridians are left to guess who they can safely transport into Florida without threat of mandatory pretrial detention and a felony prosecution.  Consequently, Section 10 "fails to give ordinary people fair notice of the conduct it punishes," even if "some conduct [] clearly falls within the provision's grasp."  *Johnson v. United States*, 576 U.S. 591, 595, 602 (2015); *see also City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

Defendants attempt to cure these defects by providing a non-binding definition of "inspection," untethered to legislative history and articulated for the first time for purposes of this litigation.  Opp. 3-4, 18.  But neither Florida courts nor local law enforcement are bound to abide by Defendants' proposed definition.  *State v. Fam. Bank of Hallandale*, 623 So. 2d 474, 478 (Fla. 1993) (stating that even an official Attorney General opinion "is not binding on a court"); *see Stenberg*, 530 U.S. at 940–41 (warning against accepting interpretation that "does not bind the state courts or local law enforcement.").

There is no reason to assume that Florida courts will embrace Defendants' new interpretation, which is not "readily apparent" from the text. *Boos v. Barry*, 485 U.S. 312, 330 (1988); *Stenberg*, 530 U.S. at 944.[6]  Defendants cite dictionary definitions of "inspect," which include "examine officially," "look carefully," or "make an examination."  Opp. 3-4.  But those do *not* match the definition Defendants assert throughout their brief: "'[i]nspection . . . denotes

---

[6] Defendants urge the Court to await state court interpretation, Opp. 18, but their sole case involved a civil law—not the looming threat of arrest, prosecution, and prison.  *See Dombrowski v. Pfister*, 380 U.S. 479, 490-91 (1965) (rejecting abstention that would require individuals to face "the burdens of defending prosecutions").

8

*an opportunity* to examine a person." Opp. 4 (emphasis added).[7] Defendants offer no textual argument for their interpretation. They maintain that even a "pending application" would mean that Section 10 does not apply, Opp. 4, 11, but it is not clear why submitting an unopened, unprocessed, or unadjudicated application for an immigration benefit means a person has "been inspected."[8] The only immigration authority Defendants cite, *Matter of G*, holds that a person is inspected at the border if he "*physically* presents himself for questioning." 3 I&N Dec. 136, 138 (BIA 1948).

### IV. The Remaining Factors Favor an Injunction.

#### A. Plaintiffs Are Already Experiencing Irreparable Harm.

Defendants ignore the very real harms this law is causing to people across the state. Section 10 is separating people from their families, blocking needed medical care, and chilling people's basic freedom to go about their daily lives. PI Br. 16-18. *See United States v. South Carolina*, 720 F.3d 518, 533 (4th Cir. 2013).

As they did in their stay motion, Defendants again allege delay. But as Plaintiffs explained, Dkt. 45 at 4-5, they filed suit two weeks after Section 10's effective date, moved for preliminary relief three weeks later, and then served twenty-three defendants as promptly as possible given the challenges that multiple process servers had completing service. Plaintiffs' efforts have been markedly diligent. *See* Ex. 12, Decl. of T. Benoit. In contrast, Defendants' cases involved "a 10-month delay," *Car Body Lab, Inc. v. Lithia Motors, Inc.*, 2021 WL 2652774, at *10 (S.D. Fla. June 21, 2021), and an "unexplained five-month delay in seeking a preliminary injunction," *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *compare Dream Defenders v. DeSantis*, 559 F. Supp. 3d 1238, 1285-86 (N.D. Fla. 2021).

#### B. The Equities Favor an Injunction.

There is no governmental interest in enforcing a state law that is preempted by federal law. *See Alabama*, 691 F.3d at 1301; *Georgia*, 691 F.3d at 1269. Likewise, "the public interest is served" by protecting the rights of Plaintiffs and all those potentially subject to prosecution

---

[7] Notably, a proposed amendment would have codified a similar idea but was rejected. H. Amend. 132085, 125th Reg. Sess. (2023) (failed) (replacing "has not been inspected…" with "has not contacted an official or office of the United States Government in person, virtually, or by telephone or e-mail…"); *see also* H. Amend 770075, 125th Reg. Sess. (2023) (failed).

[8] Applications to U.S. Citizenship and Immigration Services (USCIS) must be submitted by mail to an anonymous lockbox or online portal. *See, e.g.* https://www.uscis.gov/i-589.

under Section 10.  *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019).

Defendants argue "unclean hands," Opp. 19-20, but that doctrine has no application here. First, Defendants do not make this argument as to the majority of Plaintiffs, so an injunction remains appropriate regardless.  Second, Defendants do not establish the actual elements of this doctrine.  They make no showing that they were "personally injured" by Plaintiffs' conduct. *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).  And they do not articulate the required nexus between the conduct and the litigation; Plaintiffs have obviously not contributed to the unconstitutionality of Section 10.  *See id.*; *Lamonica*, 711 F.3d at 1309.  Third, as an equitable matter, the misdemeanor and civil infractions that Defendants allege do not mean that Defendants can cut Plaintiffs off from their families and upend their daily lives using a preempted and vague law.

### C. The Court Should Enjoin Section 10 in Full.

The Court should reject the State's request to limit any injunction to the named plaintiffs. Courts regularly grant statewide injunctions upon finding a state law facially invalid.  *See, e.g.*, *Ga. Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317, 1340 (N.D. Ga. 2011) (enjoining enforcement of immigrant transport law against "anyone"), *aff'd in part*, 691 F.3d 1250; *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1288 (N.D. Fla.), *appeal pending*, No. 22-13992 (11th Cir. Nov. 30, 2022); *Koe v. Noggle*, 2023 WL 5339281, at *28-29 & n.39 (N.D. Ga. Aug. 20, 2023) (collecting cases).

The State relies on cases expressing concerns about *nationwide* injunctions—many of which are plainly irrelevant here.  *See Garcia v. Stillman*, 2023 WL 3478450, at *2 (S.D. Fla. May 16, 2023).  In any event, the Eleventh Circuit has acknowledged that universal injunctions are appropriate where necessary to give the prevailing parties "complete relief."  *See, e.g.*, *Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022).  That is the case here, as a plaintiff-specific injunction would be "practically unworkable" for multiple reasons. *Koe*, 2023 WL 5339281, at *29.  Plaintiffs and FWAF's members, even if technically covered, are likely to be impacted as a practical matter by the statute generally chilling transportation.  *Id*. at *30; *see id*. (complications for anonymous plaintiffs).  And a plaintiffs-only injunction would inevitably invite "follow-on suits by similarly situated non-plaintiffs," leading to "needless and 'repetitious' litigation." *Id*. (citation omitted).

10

Dated: September 22, 2023                                  Respectfully submitted,

/s/ Anne Janet Hernandez Anderson
*On behalf of Attorneys for Plaintiffs*

Evelyn Wiese (CA Bar No. 338419)*
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 2201
Miami, FL 33166
(305) 573-1106
ewiese@aijustice.org

Katherine Melloy Goettel (IA Bar No. 23821)*
Emma Winger (MA Bar No. 677608)*
AMERICAN IMMIGRATION COUNCIL
1331 G St. N.W., Suite 200
Washington, DC 20005
(202) 507-7552
kgoettel@immcouncil.org
ewinger@immcouncil.org

Katherine H. Blankenship (FL Bar No. 1031234)
Daniel B. Tilley (FL Bar No. 102882)
ACLU Foundation of Florida, Inc.
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2700
kblankenship@aclufl.org
dtilley@aclufl.org

Amien Kacou (FL Bar No. 44302)
Maite Garcia (FL Bar No. 99770)
ACLU Foundation of Florida, Inc.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
(813) 288-8390
akacou@aclufl.org
mgarcia@aclufl.org
*Attorneys for Plaintiffs*
*Admitted Pro hac vice

Anne Janet Hernandez Anderson (FL Bar No. 0018092)
Paul R. Chavez (FL Bar No. 1021395)
Christina Isabel LaRocca (FL Bar No. 1025528)
Felix A. Montanez (FL Bar No. 0102763)
Cassandra Charles (NY Bar No. 5540133)*
SOUTHERN POVERTY LAW CENTER
2 South Biscayne Blvd., Suite 3750
Miami, FL 33131-1804
(786) 347-2056
aj.hernandez@splcenter.org
paul.chavez@splcenter.org
christina.larocca@splcenter.org
felix.montanez@splcenter.org
cassandra.charles@splcenter.org

Cody Wofsy (CA Bar No. 294179)*
Spencer Amdur (CA Bar No. 320069)*
ACLU Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org
samdur@aclu.org

Omar Jadwat (NY Bar No. 4118170)*
Edith Sangueza (NY Bar No. 5694534)*
ACLU Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
ojadwat@aclu.org
irp_es@aclu.org

## **CERTIFICATE OF SERVICE**

I hereby certify on September 22, 2023, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system. I further certify that a true and correct copy of the foregoing and all supporting attachments were served on all parties of record via CM/ECF, e-mail, or U.S. Mail as described in the Service List below on September 22, 2023.

                                             */s/ Anne Janet Hernandez Anderson*
                                             Anne Janet Hernandez Anderson
                                             Fla. Bar No. 0018092
                                             SOUTHERN POVERTY LAW CENTER
                                             2 South Biscayne Blvd., Suite 3750
                                             Miami, FL 33131-1804
                                             (786) 347-2056
                                             aj.hernandez@splcenter.org

**SERVICE LIST**

James Percival
Henry C. Whitaker
Natalie P. Christmas
Joseph E. Hart
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
E-mail: james.percival@myfloridalegal.com
henry.whitaker@myfloridalegal.com
natalie.christmas@myfloridalegal.com
joseph.hart@myfloridalegal.com
Tel.: (850) 414-3300
*Counsel for Defendants Attorney General Ashley Moody and Statewide Prosecutor Nicolas Cox*
*Via CM/ECF*

Buddy Jacobs
Jacobs Scholz & Wyler, LLC
961687 Gateway Blvd., Suite 201-I
Fernandina Beach, FL 32034
E-mail: buddy@jswflorida.com
Tel.: (904) 261 3693
*Via E-mail and U.S. Mail*

Ryan D. Newman
Nicholas J.P. Meros
Samuel F. Elliot
Executive Office of the Governor
The Capitol
400 S. Monroe St.
Tallahassee, FL 32399-000
E-mail:
ryan.newman@eog.myflorida.com
nicholas.meros@eog.myflorida.com
samuel.elliot@eog.myflorida.com
Tel.: (850) 717-9305
*Via CM/ECF*

Melissa Nelson
Office of the State Attorney
4th Judicial Circuit
Ed Austin Building
311 West Monroe Street
Jacksonville, FL 32202
E-mail: mwnelson@coj.net
Tel.:  904-255-2500
*Via E-mail and U.S. Mail*