UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22655-ALTMAN/Reid

**THE FARMWORKER ASSOCIATION
OF FLORIDA, INC.**, *et al.*,

    *Plaintiffs*,

v.

**GOVERNOR RONALD D. DESANTIS**,
*in his official capacity as Governor of the State of
Florida*, *et al.*,

    *Defendants*.
_____/

## ORDER GRANTING MOTION TO DISMISS

One of our Defendants,[1] Governor Ronald DeSantis, has moved to dismiss the claims against him on the ground that "the Governor [is] an improper party based on his sovereign immunity" and because the Plaintiffs lack standing. *See* Motion to Dismiss [ECF No. 51] at 1. For the reasons set out below, we now **GRANT** the Motion to Dismiss.

### THE FACTS

On May 10, 2023, Governor DeSantis signed into law Senate Bill 1718 ("SB 1718"), which amended FLA. STAT. § 787.07 to provide that "a person who knowingly and willfully transports into this state an individual whom the person knows, or reasonably should know, has entered the United

---

[1] On September 5, 2023, "[a]ll Plaintiffs in this action and Defendant State Attorneys" filed a Joint Stipulation and Motion to Stay [ECF No. 42], "stipulat[ing] and jointly mov[ing] for a stay of all deadlines for the Defendant State Attorneys[.]" *Id.* at 2. That same day, we granted and stayed the case as to the State Attorneys. *See* Paperless Order Granting Joint Stipulation and Motion to Stay [ECF No. 44]. On September 18, 2023, the Attorney General and the Statewide Prosecutor filed their own Consent Motion to Stay Response to the Plaintiffs' Complaint [ECF No. 52], which we likewise granted, *see* Paperless Order Granting Consent Motion to Stay Response to the Plaintiffs' Complaint [ECF No. 53].

States in violation of law and has not been inspected by the Federal Government since his or her unlawful entry from another country commits a felony of the third degree[.]" Complaint for Injunctive Relief and Declaratory Judgment (the "Complaint") [ECF No. 1] ¶¶ 64–66 (quoting FLA. STAT. § 787.07(1)). The Plaintiffs filed their Complaint on July 17, 2023, suing "Defendants Ronald D. DeSantis, Governor of the State of Florida, Ashley Moody, Attorney General of the State of Florida, Nicholas B. Cox, Statewide Prosecutor," and the state attorneys for all twenty of Florida's judicial circuits. *Id.* at 3. The Plaintiffs claim that "Section 10 of [SB 1718], Ch. 2023-40, Laws of Fla. ('Section 10') unconstitutionally criminalizes the act of transporting a broad category of immigrants into Florida." *Id.* ¶ 1. Governor DeSantis filed his Motion to Dismiss on September 15, 2023.[2]

## THE LAW

Under Federal Rule of Civil Procedure 12(b), a defendant may move for dismissal of a claim based on one or more of seven specific defenses: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19. *See* FED. R. CIV. P. 12(b). "A motion to dismiss asserting the defense of Eleventh Amendment immunity presents a challenge to the court's subject matter jurisdiction." *Souto Fla. Int'l Univ. Found., Inc.*, 446 F. Supp. 3d 983, 989 (S.D. Fla. 2020) (Lenard, J.); *see also Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists."). So too does a motion to dismiss for lack of standing. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same

---

[2] The Motion to Dismiss is now ripe for resolution. *See* Plaintiffs' Opposition to Governor DeSantis's Motion to Dismiss (the "Response") [ECF No. 68]; Governor DeSantis's Reply in Support of Motion to Dismiss (the "Reply") [ECF No. 72].

2

effect as a dismissal for lack of subject matter jurisdiction . . . . [It] is not a judgment on the merits and is entered without prejudice." (cleaned up)).

A motion to dismiss under Rule 12(b)(1) may attack subject-matter jurisdiction either facially or factually. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). On a facial challenge, the Court must, as with other Rule 12(b) motions, limit its review to the factual allegations in the complaint—accepting well-pled allegations as true. *Id.* at 1529. A factual attack, however, challenges "the existence of subject matter jurisdiction in fact" and requires that the Court examine materials outside of the pleadings—such as testimony, declarations, and affidavits—to ensure the proper exercise of its jurisdiction. *Ibid.*

## ANALYSIS

### I. Standing

The Governor argues that the "Plaintiffs do not have Article III standing against Governor DeSantis because their alleged injuries are neither traceable to, nor redressable by, the Governor." Motion to Dismiss at 5. In the Governor's view, "[t]here is no causal chain linking the Governor to Plaintiffs' alleged injuries flowing from section 787.07 because he does not enforce the law . . . . [Since] the Governor does not enforce section 787.07, Plaintiffs' requested injunction(s) against him would not be effectual . . . . Put differently, Plaintiffs cannot show redressability as to the Governor because he cannot implement the relief they seek—refusing to enforce section 787.07." *Id.* at 6–7 (cleaned up). We agree.

To establish standing under Article III of the U.S. Constitution, a plaintiff must have suffered an "injury in fact" that's "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "To establish traceability and redressability in a lawsuit seeking to enjoin a government official from enforcing the law, a plaintiff must show 'that the official has the authority

3

to enforce the particular provision [being] challenged, such that [the] injunction prohibiting enforcement would be effectual.'" *Dream Defs. v. Gov. of the State of Fla.*, 57 F.4th 879, 888–89 (11th Cir. 2023) (quoting *Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021)). In many cases, "redressability and traceability overlap as two sides of a causation coin." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005).

Beginning with traceability, we don't think that the Plaintiffs' alleged injuries are fairly traceable to the Governor's conduct. As the Eleventh Circuit has explained, "[t]he fact that [SB 1718] itself doesn't contemplate enforcement by the [governor] counts heavily against [the] plaintiffs' traceability argument." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1299 (11th Cir. 2019). "The causation element of standing," after all, "requires the named defendants to possess authority to enforce the complained-of provision." *Ibid.* (quoting *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015)). And § 787.07 doesn't *even mention* the Governor—let alone contemplate his enforcement. *See* Complaint ¶ 66 (quoting FLA. STAT. § 787.07).

Resisting this conclusion, the Plaintiffs contend that they have standing to sue the Governor because "the Florida Governor is generally responsible for enforcing Florida's laws," has "looming authority to remove state officials who do not enforce Section 10 to his satisfaction," and "also has specific authority to 'initiate judicial proceedings' against state, county, or municipal officers 'to enforce compliance with any duty or restrain any unauthorized act.'" Response at 3–4, 6 (quoting FLA. CONST. art. IV, § 1(b)). But an official's "general supervision and administration of" a law "does not make" the law "traceable to [that official]." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020); *see also Lewis*, 944 F.3d at 1300 (rejecting the plaintiffs' reliance on "a host of provisions of the Alabama Code that generally describe the Attorney General's [enforcement] authority" to establish traceability).

4

And the Governor's power to initiate judicial proceedings against delinquent officials doesn't satisfy the traceability requirement either. As the Eleventh Circuit made plain in *Jacobson* (where the Florida Secretary of State was the only defendant):

> To satisfy the causation requirement of standing, a plaintiff's injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (alterations adopted) (internal quotation marks omitted). The voters and organizations contend that they are injured because Republicans, not Democrats, appear first on the ballot in Florida's general elections. So for them to have standing, the order in which candidates appear on the ballot must be traceable to the Secretary— the only defendant in this action. The problem for the voters and organizations is that Florida law tasks the Supervisors, independently of the Secretary, with printing the names of candidates on ballots in the order prescribed by the ballot statute. Fla. Stat. § 99.121 ("The names of [candidates] shall be printed by the supervisor of elections upon the ballot in their proper place as provided by law."). The Secretary is responsible only for "certify[ing] to the supervisor of elections of each county . . . the names of persons nominated." *Id.* The voters and organizations have offered no contrary evidence to establish that the Secretary plays any role in determining the order in which candidates appear on ballots. "Because the [Secretary] didn't do (or fail to do) anything that contributed to [their] harm," the voters and organizations "cannot meet Article III's traceability requirement." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc).
>
> Our conclusion that any injury from ballot order is not traceable to the Secretary rests on the reality that the Supervisors are independent officials under Florida law who are not subject to the Secretary's control . . . . Indeed, the only means of control the Secretary has over the Supervisors is through coercive judicial process: she may bring "actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a county supervisor of elections." Fla. Stat. § 97.012(14). That the Secretary must resort to judicial process if the Supervisors fail to perform their duties underscores her lack of authority over them. Because the Supervisors are independent officials not subject to the Secretary's control, their actions to implement the ballot statute may not be imputed to the Secretary for purposes of establishing traceability.

974 F.3d at 1253–54.

Our case is very similar. For one thing, even more so than in *Jacobson*—where the statute empowered the secretary of state to "certify[ ] to the supervisor of elections of each county . . . the names of persons nominated," *id.* at 1253—our law never even mentions the Governor and (it goes without saying) gives him no role in the statute's enforcement. For another, as in *Jacobson*, the statewide prosecutor and the state attorneys are "independent officials under Florida law who are not subject to

5

the [Governor's] control[.]" *Ibid.*; *see also Warren v. DeSantis*, 653 F. Supp. 3d 1118, 1144 (N.D. Fla. 2023) (Hinkle, J.) ("In Florida, state attorneys are independently elected, constitutional officers. Party affiliation or political loyalty to the governor is not required and cannot properly be demanded."); FLA. CONST. art. IV, § 4 ("The attorney general shall be the chief state legal officer. There is created in the office of the attorney general the position of statewide prosecutor. The statewide prosecutor shall have concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting or has affected two or more judicial circuits as provided by general law."). Finally, like *Jacobson*, "the only means of control the [Governor] has over the [statewide prosecutor and state attorneys] is through coercive judicial process": He may "initiate judicial proceedings in the name of the state against any executive or administrative state, county or municipal officer to enforce compliance with any duty or restrain any unauthorized act." *Jacobson*, 974 F.3d at 1253; *see also* FLA. CONST. art. IV, § 1(b). As the Eleventh Circuit noted in *Jacobson*: "That the [Governor] must resort to judicial process if the [statewide prosecutor and the state attorneys] fail to perform their duties underscores [his] lack of authority over them." 974 F.3d at 1253. We therefore disagree that the Plaintiffs' harm is fairly traceable to the Governor.

The Plaintiffs have also failed to satisfy the standing test's redressability prong because they cannot show that a favorable decision against the Governor "would amount to a significant increase in the likelihood that the [Plaintiffs] would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002); *see also Lewis*, 944 F.3d at 1301 ("[I]n assessing this third component of the standing doctrine, we ask whether a decision in a plaintiff's favor would significantly increase the likelihood that she would obtain relief that directly redresses the injury that she claims to have suffered." (cleaned up)). To put the point directly, "[t]he question for us . . . is whether [the Plaintiffs'] requested relief—in particular, against the [Governor]—would significantly increase the

6

likelihood" that FLA. STAT. § 787.07 won't be enforced. *Lewis*, 944 F.3d at 1301. As we noted at oral argument, since the Attorney General is "responsible for the enforcement of SB 1718," Complaint ¶ 61—and because the Office of Statewide Prosecution "has concurrent jurisdiction with state attorneys to prosecute alleged violations" of FLA. STAT. § 787.07, Complaint ¶ 61—an injunction against the Governor in our case would seem to have *no effect* on the likelihood that § 787.07 will be enforced.

In their Response, the Plaintiffs suggest that, "[b]ecause Governor DeSantis has been a driving force behind Section 10, and he has a proven track record of enforcing legislation through the removal of state attorneys, there is a causal chain linking the Governor to Plaintiffs' alleged injuries flowing from section 787.07 . . . . An injunction against Governor DeSantis would redress Plaintiffs' harm." Response at 7 (cleaned up). But those facts—even if true—have nothing to do with the question of redressability, which asks only whether the Plaintiffs' requested injunction *against the Governor* would "*directly redress*[ ] the injury suffered." *Utah*, 536 U.S. at 464 (emphasis added). As the Eleventh Circuit noted in *Lewis*:

> The question for us . . . is whether plaintiffs' requested relief—in particular, against the Attorney General—would significantly increase the likelihood that their employers would pay them $10.10 per hour pursuant to the ordinance. We can easily dispatch with the suggestion that plaintiffs' requested relief would "directly" redress their injuries . . . . As we have explained, Act No. 2016-18 gives the Attorney General no enforcement role whatsoever. Plaintiffs' immediate gripe is with their employers, who aren't paying the ordinance-prescribed wages . . . .
>
> What, though, about "indirect[ ]"—one might say downstream—redress? . . . . Plaintiffs' core contention seems to be that a federal-court order declaring Act No. 2016-18 unconstitutional—supplemented by an injunction ordering the Attorney General to notify the Legislature and the public that the Act is invalid—would significantly increase the likelihood (1) that the City of Birmingham would enforce its minimum-wage ordinance and (2) that pursuant to the ordinance, Birmingham employers would start paying their employees $10.10 per hour.
>
> We see two problems. First, the baseline assumption underlying plaintiffs' redressability theory—that if they were granted their requested relief "the Birmingham Ordinance could then go into effect"—appears more tenuous now than it once did. It is (at best) unclear whether the City of Birmingham would proceed to enforce its minimum-wage ordinance even if plaintiffs were to prevail here . . . . Second, and in any event, even if plaintiffs were correct that their requested relief would lead

7

> Birmingham to implement Ordinance No. 16-28, we think it somewhat unlikely—and certainly not "significantly" more likely, as the law requires—that it would result in plaintiffs' employers paying them more, at least immediately.

944 F.3d at 1301–03.

The same is true here. Even if the Plaintiffs are right that there's some "causal chain linking the Governor to Plaintiffs' alleged injuries flowing from section 787.07," Response at 7, they haven't shown that an injunction against the Governor would "directly redress" the Plaintiffs' harm, *Utah*, 536 U.S. at 464. Even if we enjoined Governor DeSantis from "enforcing" the law, in other words, the Attorney General would remain independently "responsible for the enforcement of SB 1718," and the Office of Statewide Prosecution would *still* have "concurrent jurisdiction with state attorneys to prosecute alleged violations of certain criminal laws that occur or have occurred in two or more judicial circuits, including alleged human trafficking or smuggling crimes." Complaint ¶ 62.

And that's really the end of the matter because "a plaintiff lacks standing to sue over a defendant's action if an independent source would have caused him to suffer the same injury." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023). To crib again from *Jacobson*:

> Because the Secretary will not cause any injury the voters and organizations might suffer, relief against her will not redress that injury—either "directly or indirectly." *See Lewis*, 944 F.3d at 1301 (internal quotation marks omitted). An injunction ordering the Secretary not to follow the ballot statute's instructions for ordering candidates cannot provide redress, for neither she nor her agents control the order in which candidates appear on the ballot. Nor can declaratory relief against the Secretary directly redress any injury to the voters and organizations . . . . "Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Id.* (quoting [*Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992)] (Scalia, J., concurring in part and concurring in the judgment)).

974 F.3d at 1254–55. Because the other named Defendants in our case have the independent authority to enforce the law—and since Governor DeSantis's presence in this litigation doesn't "significantly increase the likelihood" of the Plaintiffs obtaining the relief they seek, *Lewis*, 944 F.3d at 1301—the Plaintiffs lack standing to assert their claims against the Governor.

## II.     Sovereign Immunity

The Governor also says that "Eleventh Amendment sovereign immunity bars Plaintiffs' claims against [him]." Motion to Dismiss at 2. Specifically, the Governor contends that the Plaintiffs haven't "plausibly allege[d] that [he] possesses the specific power to enforce [SB 1718]." *Id.* at 3. In the Governor's words:

> [T]he Governor does not enforce section 787.07 . . . . Indeed, section 787.07 is a criminal statute enforced by the Statewide Prosecutor and State Attorneys. *See* § 16.56, Fla. Stat. (providing that the Office of Statewide Prosecution may "[i]nvestigate and prosecute the offenses of . . . [a]ny violation of chapter 787, as well as any and all offenses related to a violation of chapter 787"); § 27.02(1), Fla. Stat. ("The state attorney shall appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party . . . .").

*Id.* at 4. We agree.

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Amendment, in other words, "protects states from being subject to suit in federal court." *Freyre v. Chronister*, 910 F.3d 1371, 1380 (11th Cir. 2018). In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh-Amendment immunity "for suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000). This "*Ex Parte Young*" doctrine has been described as a "legal fiction" because it "creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and, hence, without immunity protection, when they enforce state laws in derogation of the Constitution." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–37 (11th Cir. 1999); *see also Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) ("[*Ex Parte Young*] held that official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional

9

acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment.").

But, under *Ex Parte Young*, "a litigant must bring his case against the state official or agency responsible for enforcing the allegedly unconstitutional scheme." *Osterback v. Scott*, 782 F. App'x 856, 858–59 (11th Cir. 2019) (cleaned up); *see also Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("A state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit."). In short, "[w]here the named defendant lacks any responsibility to enforce the statute at issue, 'the state is, in fact, the real party in interest,' and the suit remains prohibited by the Eleventh Amendment." *Osterback*, 782 F. App'x at 859 (quoting *Summit Med. Assocs.*, 180 F.3d at 1341).

In the section of their Complaint titled "DEFENDANTS," the Plaintiffs outline the salient differences between the enforcement authorities of the various Defendants. *Compare* Complaint ¶ 61 (stating that Ashley Moody—the "Attorney General of Florida [and] the chief legal officer of the State"—"is responsible for the enforcement of SB 1718"), *and id.* ¶ 62 (describing how Nicholas B. Cox—the "Statewide Prosecutor of the State of Florida"—has "concurrent jurisdiction with state attorneys to prosecute alleged offenses that occur or have occurred in two or more judicial circuits, including alleged human trafficking or smuggling crimes"), *with id.* ¶ 60 (describing how "the Defendant Ronald D. DeSantis . . . is vested with the 'supreme executive power' in Florida and is constitutionally required to 'take care that the laws be faithfully executed' . . . . [and] is also empowered to 'initiate judicial proceedings' against, or 'suspend from office' state and local officers for failure to comply with state law" (quoting FLA. CONST. art. IV, §§ 1(a–b), 7(a))). In other words, the Plaintiffs concede that, whereas the Attorney General and the Statewide Prosecutor have direct enforcement power over the challenged statute, the Governor's enforcement authority derives (if at all) from his "general[ ] responsib[ility] for enforcing Florida's laws." Response at 3.

10

The Plaintiffs rely mainly on the Eleventh Circuit's decision in *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012), for their view that the "[G]overnor's general responsibility to enforce a state law regulating immigration" makes him a "proper defendant" in this case. Response at 2 (citing *Ga. Latino*, 691 F.3d at 1260 & n.5); *see also id.* at 3 ("As in *Georgia*, the Florida Governor is generally responsible for enforcing Florida's laws, including Section 10. Both the Florida Constitution and the Georgia Constitution contain the same mandate: 'The governor shall take care that the laws are faithfully executed[.]'" (quoting FLA. CONST. art. IV, § 1(a)). Two problems with this.

*One*, "Florida's Governor, unlike Georgia's, does not enforce the state's criminal laws . . . . Florida's Governor is neither the state's chief law enforcement official, nor does he possess the residual power to commence criminal prosecutions. That role and power belong to Florida's Attorney General, and the Governor cannot unilaterally direct her to prosecute crimes on behalf of the state." Reply at 7.[3] The Eleventh Circuit drew this important distinction in *City of S. Miami v. Governor*, 65 F.4th 631 (11th Cir. 2023)—a case that, much more than *Georgia Latino*, is on all-fours with ours:

> [In *Georgia Latino*,] [w]e held that the governor was a proper defendant under *Ex parte Young* . . . because according to the Georgia constitution, the governor is responsible for law enforcement in that state and is charged with executing the laws faithfully and the governor further has the residual power to commence criminal prosecutions and

---

[3] *Compare* FLA. CONST. art. IV, § 4(b) ("The attorney general shall be the chief state legal officer. There is created in the office of the attorney general the position of statewide prosecutor. The statewide prosecutor shall have concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting or has affected two or more judicial circuits as provided by general law. The statewide prosecutor shall be appointed by the attorney general from not less than three persons nominated by the judicial nominating commission for the supreme court, or as otherwise provided by general law."), *with* GA. CODE. ANN. § 17-1-2 ("A 'penal action' is an action allowed in pursuance of public justice under particular laws. If no special officer is authorized to be the plaintiff therein, the state, the Governor, the Attorney General, or the prosecuting attorney may be the plaintiff."), *and* GA. CODE. ANN. § 45–15–35 ("The Governor shall have the power to direct the Department of Law, through the Attorney General as head thereof, to institute and prosecute in the name of the state such matters, proceedings, and litigations as he shall deem to be in the best interest of the people of the state.").

> has the final authority to direct the attorney general to "institute and prosecute" on behalf of the state.
>
> In contrast with *Georgia Latino Alliance* . . . this appeal involves a permanent injunction following trial where the organizations failed to present any evidence—as they must— that the governor or attorney general [of Florida] would enforce S.B. 168[.]

*Id.* at 644. As in *City of South Miami*, in other words, the Plaintiffs' reliance on *Georgia Latino* for the general proposition that the Governor of Florida's enforcement authority renders him a proper Defendant in *this* case is misplaced.

*Two*, putting aside these material differences between the roles of the Florida and Georgia governors, we disagree with the Plaintiffs that Governor DeSantis's "supreme executive power" (even when coupled with his duty to "take care that the laws be faithfully executed") exempts him from sovereign immunity for *every* pre-enforcement challenge to a Florida criminal statute. The Eleventh Circuit has made clear that the "Governor's constitutional and statutory authority to enforce the law and oversee the executive branch do not make him a proper defendant under *Ex Parte Young* . . . . [The] Governor's general authority to enforce Florida's laws . . . do[es] not make the Governor a proper party because, as we have held, a governor's general executive authority, or even partial responsibility for administering a challenged statute, is insufficient to make the governor a proper party[.]" *Osterback*, 782 F. App'x at 859; *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003) ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances . . . . If a governor's general executive power provided a sufficient connection to a state law to permit jurisdiction over him, any state statute could be challenged simply by naming the governor as a defendant . . . . Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction." (citing *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276–77 (N.D. Fla. 2000) (Collier,

12

J.))).[4] In our case, as the Plaintiffs concede, the Attorney General of Florida, as "the chief legal officer of the State . . . is responsible for the enforcement of SB 1718," and the "jurisdiction . . . to prosecute" violations of the statute falls on the Office of Statewide Prosecution and the State Attorneys, who "are the prosecuting officers of all trial courts in their respective circuits." Complaint ¶¶ 61–63. We therefore disagree that "Governor DeSantis is sufficiently responsible for enforcing" SB 1718 simply because "he is constitutionally tasked with the 'faithful execut[ion]' of state laws[.]" Response at 2, 4.

The Plaintiffs separately suggest that the Governor is responsible for enforcing SB 1718 because the Florida Constitution "empower[s him] to 'initiate judicial proceedings' against, or 'suspend from office' state and local officers for failure to comply with state law, including SB 1718." Complaint ¶ 60 (quoting FLA. CONST. art. IV, §§ 1(b), 7(a)). "This authority," the Plaintiffs insist, "is not sitting dormant in the pages of the Florida Constitution: Governor DeSantis has recently removed multiple prosecutors who, in his view, were not taking sufficient action to enforce criminal laws that the Governor has prioritized." Response at 6. As to this last point, the Plaintiffs highlight two examples:

> In August 2022, the Governor suspended State Attorney Andrew Warren of Florida's 13th Judicial District because Warren indicated that he would not enforce restrictions on abortion and further spoke out against Florida's potential ban on gender affirming therapy to transgender people—a legislative priority of the Governor's. Governor DeSantis stated, "State Attorneys have a duty to prosecute crimes as defined in Florida law" and that "[i]t is my duty to hold Florida's elected officials" accountable. Exactly one year later, Governor DeSantis, in August 2023, suspended State Attorney Monique Worrell of Florida's 9th Judicial Circuit under the guise of "neglect of duty and incompetence," accusing her of being soft on crime and not prosecuting repeat offenders. In suspending State Attorney Worrell, DeSantis once again invoked his

---

[4] *See also Harris*, 106 F. Supp. 2d at 1277 ("In order to challenge the constitutionality of a rule of law, a plaintiff must bring forth an action against the state official (or agency) responsible for enforcing the rule . . . . Governor Bush argues that he is not the proper party to challenge the Baker Act because he holds no special relationship to the Act and is not expressly directed to oversee its enforcement. Plaintiff contends, however, that Governor Bush is the proper party because the Florida Constitution vests him with executive power to faithfully execute and enforce the laws of Florida. The Court agrees with Governor Bush . . . . [I]f this Court were to conclude that Governor Bush's general obligation to faithfully execute the laws is a sufficient connection to the enforcement of [the Baker Act], then the constitutionality of every statute enacted by the [Florida] legislature necessarily could be challenged by merely naming the Governor as a party defendant." (cleaned up)).

13

"duty as Governor to ensure that the laws enacted by our duly elected Legislature are followed."

*Id.* at 6–7.

While we accept these allegations as true for purposes of adjudicating the Motion to Dismiss, the "general authority" created by "Article IV, § 1 of the Florida Constitution . . . . is insufficient to make [the Governor] [a] proper party whenever a plaintiff seeks to challenge the constitutionality of a law." *Harris*, 106 F. Supp. 2d at 1276–77. That a supervising official's "only means of control" over the law's enforcer is "through coercive judicial process"—*i.e.*, where the supervising official must, to enforce the law, initiate judicial proceedings against the delinquent official—only "underscores" the supervising official's "lack of authority" over the enforcing official. *Jacobson*, 974 F.3d at 1253; *see also City of S. Miami*, 65 F.4th at 642–43 ("The governor and attorney general are limited to coercive suits and [thus] do not 'enforce' S.B. 168 against the organizations or their members . . . . [I]f the governor's ability to suspend officials for cause established traceability, then the governor would be a proper defendant in any challenge to State or local policy." (cleaned up)). As one of our colleagues in the Northern District of Florida put it recently:

> Florida has 20 judicial circuits. As required by the Florida Constitution, each circuit has an elected state attorney who serves as the circuit's chief prosecutor. Fla. Const. art. V, § 17. A state attorney is part of the executive branch, but under Florida's unique constitutional structure, a state attorney is not an employee of, or supervised by, the governor. Instead, a state attorney is a constitutional officer—an officer of independent stature within Florida government. A state attorney has complete discretion in making the decision to charge and prosecute any given case . . . . To be sure, a governor may suspend certain officials, including state attorneys, for 'malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony.' Fla. Const. art. IV, § 7(a). Even so, the power to remove is not analogous to the power to control.

*Warren*, 653 F. Supp. 3d at 1123–24 (cleaned up).

Nor are we moved by the fact that Governor DeSantis has removed public officials for (what he perceived as) an unwillingness to follow *other*, unrelated laws. The Governor, as we've seen, has the power to suspend certain state officials who, in his judgment, refuse to enforce Florida law. *See* FLA.

14

CONST. art. IV, § 7(a) ("By executive order stating the grounds and filed with the custodian of state records, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony[.]"). But his decision to exercise this constitutional prerogative in *other* circumstances isn't probative of the question we face here—*viz.*, whether, under *this law*, he's the proper enforcement official for purposes of the narrow exception the Supreme Court carved out in *Ex Parte Young*. *See City of S. Miami*, 65 F.4th at 642–43 ("[T]he organizations assert that the governor has sufficient control over local officials because S.B. 168 provides that local officials may be 'subject to action by the governor in the exercise of his or her authority under the State Constitution and state law.' . . . The organizations speculate that the governor will use this statutory grant of general authority together with his preexisting authority under article IV of the Florida Constitution to suspend local officials who refuse to enforce S.B. 168. . . . . [But,] if the governor's ability to suspend officials for cause established traceability, then the governor would be a proper defendant in any challenge to State or local policy." (cleaned up)). And the Plaintiffs never allege that the Governor has "enforced or threatened to enforce" FLA. STAT. § 787.07 "against them or their members." *Id.* at 642 (noting that the plaintiffs had "pointed to no evidence that the governor" had "'enforced or threatened to enforce' S.B. 168 [the specific law at issue in that case] *against them or their members*" (emphasis added) (quoting *Jacobson*, 974 F.3d at 1254)).[5] We're thus not persuaded that the

---

[5] The Plaintiffs do allege that "Senator Blaise Ingoglia, who would go on to sponsor SB 1718, stated that the 'Governor will not stand by idly as this open-borders agenda continues to take over our families, friends and our communities. As a matter of fact, he will boldly push Florida as the blueprint by which other states should fight illegal immigration.'" Complaint ¶ 83. Two problems with this. *One*, the Complaint isn't at all clear that Senator Ingoglia's speculation about Governor DeSantis not standing "by idly" was a threat to enforce SB 1718 *specifically* by suspending any state attorney who refuses to enforce it. *Two*—and in any event—we haven't found a single case (and the Plaintiffs haven't cited any) for the proposition that a third party's speculation about what the governor *might* do

15

Governor's power to suspend or initiate judicial proceedings against state and local officers confers on him the kind of enforcement authority *Ex Parte Young* demands.

The last argument the Plaintiffs muster in their Response fares no better. "Governor DeSantis," the Plaintiffs insist, "has been a driving force behind Section 10"—and, through his public advocacy for the bill, he's sufficiently "connected" to the statute's *enforcement* to make him a proper defendant under *Ex Parte Young*. Response at 4, 7; *see also id*. at 5 ("'[The Governor's] efforts to keep undocumented immigrants out of Florida are well documented and will continue directly or indirectly via enforcement of Section 10 absent an injunction."").[6] In saying so, the Plaintiffs place special emphasis on the comments of third parties:

> [W]hen SB 1718 was proposed, Florida Department of Law Enforcement Commissioner Mark Glass made a public statement praising Governor DeSantis, stating, "In tandem with our continued vigilance and cooperation with our law enforcement partners across the state, the initiatives championed today by Governor DeSantis will help to keep Floridians safer than ever." Similarly, when Governor DeSantis announced the initiatives that led to this proposal, the Director of the Florida Highway Patrol, Colonel Gene S. Spaulding, also made a public statement touting the "strong support" needed from the Governor to keep "illegal activity out of our state and off our roadways."

*Id*. at 5 (citations omitted). They add that Governor DeSantis issued "Executive Order 21-223," which served "as a precursor to Section 10[.]" *Id*. at 4. And, rejecting the Governor's "suggest[ion] that *Ex Parte Young* requires explicit enforcement authority to be found within the challenged statute," *id*. at 7, the Plaintiffs contend that he's sufficiently "connect[ed] with the enforcement of the act" to qualify as a proper defendant under *Ex Parte Young*, *id*. at 8. We're not convinced.

---

somehow transforms an otherwise-immune governor into the proper enforcement official for purposes of *Ex Parte Young*.

[6] The Plaintiffs advance this argument for "the traceability and redressability prongs of [their] standing" analysis, Response at 5, but they note later in their Response that "Governor DeSantis is a proper defendant under *Ex Parte Young* for the same reasons Plaintiffs have standing to sue him," *id*. at 7. We'll therefore consider this argument here.

The Plaintiffs' sweeping interpretation of *Ex Parte Young* would eviscerate the long-standing rule in our Circuit—which is that, "when a plaintiff challenges the constitutionality of a rule of law, it is the state official *designated to enforce that rule* who is the proper defendant." *ACLU v. The Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993) (emphasis added) (citing *Diamond v. Charles*, 476 U.S. 54, 64 (1986)); *see also Common Cause Fla. v. DeSantis*, 2022 WL 19978293, at *3 (N.D. Fla. Nov. 8, 2022) (per curiam) ("The lower federal courts have consistently held or recognized that governors cannot be sued under *Ex Parte Young* just because they have a general duty to enforce state law or just because they publicly endorse and defend the challenged scheme."); *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) ("[T]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute . . . . The same is true with respect to the fact that the governor has publicly endorsed and defended the challenged statutes. Rather, in order to be a proper defendant in an action to enjoin an allegedly unconstitutional state law, the governor must have a specific duty to enforce that law." (cleaned up)). In line with this precedent, we decline the Plaintiffs' invitation to use the Governor's "championing" of the statute as evidence of his power to enforce it.

Nor would any such rule make any sense. *Ex Parte Young*, as we've said, carved out a narrow exception to the general rule that states cannot be "subject to suit in federal court," *Freyre*, 910 F.3d at 1380, for public officials whose "office imbues [them] with the responsibility to enforce the law or laws at issue in the suit," *Grizzle*, 634 F.3d at 1319. But a governor's decision to advocate for a particular policy outcome—whether good or bad, smart or unwise—tells us nothing about his authority to enforce that policy if, after making its way through the legislative process, it finally becomes law. Governors advocate (and "champion") lots of causes—but that doesn't mean they can be sued whenever, in its considered judgment, the legislature submits one of those causes for his veto or signature.

Which brings us to an argument the Plaintiffs raised for the first time at oral argument. At our December 13th motions hearing, the Plaintiffs suggested (for the very first time) that the Governor may enforce SB 1718 under a separate Florida law (FLA. STAT. § 943.04(2)(A)), which provides, in pertinent part, as follows:

> In carrying out the investigative services of the Criminal Justice Investigations and Forensic Science Program and under appropriate rules and regulations adopted by the department, upon written order of the Governor, or by direction of the Legislature acting by a concurrent resolution, and at the direction of the executive director, the department may investigate violations of any of the criminal laws of the state, and shall have authority to bear arms, make arrests and apply for, serve and execute search warrants, arrest warrants, capias, and other process of the court.

This new argument fails for three reasons.

*One*, we will not consider an argument the Plaintiffs never advanced *either* in their Complaint *or* in their Response. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue[.]"); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

*Two*, and in any event, a close reading of § 943.04(2)(A) reveals that the Governor cannot (under the statute) unilaterally launch an investigation into "any of the criminal laws of the state[.]" For one thing, such an investigation would require *both* a "written order of the Governor" *and* "the direction of the executive director" of the FDLE. *See* FLA. STAT. § 943.04(2)(A). The obvious textual implication is that, without the FDLE director's consent, the Governor *cannot* enforce this law. *Cf. Women's Emergency Network*, 323 F.3d at 949 (holding that "the district court's dismissal of Governor

18

Bush as a defendant to the lawsuit was proper" under *Ex Parte Young* because the governor "is not the 'head' of the Florida Department of Highway Safety and Motor Vehicles," but, "[r]ather, the Governor and the cabinet are jointly responsible for the Department"). For another, the department "may"—or may not—investigate the alleged violation of the law. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 112 (2012) ("Mandatory words impose a duty; permissive words grant discretion . . . . The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive[.]").[7]

*Three*, and no less significant, if § 943.04(2)(A) establishes the governor's enforcement power over SB 1718, then it necessarily establishes his enforcement power over just about any other Florida criminal statute. Such a theory "prove[s] entirely too much" because it would transform the governor into "a proper party defendant under innumerable provisions of" Florida's criminal code. *City of S. Miami*, 65 F.4th at 643. We won't go nearly that far. Under the narrow exception *Ex Parte Young* (and its progeny) created, state officials are liable only if they're charged with enforcing the statute in question—irrespective of some general authority to *request* (but not demand) that the FDLE open an

---

[7] The statute's use of the precatory "may" appears in sharp contradistinction to its later use of the mandatory "shall." *See* FLA. STAT. § 943.04(2)(A) (noting that "the department *may* investigate violations of any of the criminal laws of the state, and *shall* have authority to bear arms, make arrests . . . ." (emphases added)). The statute is thus clear that the FDLE "may" (or may not) investigate the violations the Governor writes them about—and, if it does elect to investigate, then it "shall" have the power to bear arms, make arrests, etc. *See* SCALIA & GARNER at 93 ("Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*.")); *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1262 (11th Cir. 2020) ("Where [the legislature] knows how to say something but chooses not to, its silence is controlling." (quoting *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015))); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that [the legislature] has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when [the legislature] has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); *cf. Savage Servs. Corp. v. United States*, 25 F.4th 925, 935 (11th Cir. 2022) (refusing to read into the Oil Pollution Act a waiver of sovereign immunity because the legislature "knows how to waive sovereign immunity when it wants to").

investigation. Having failed to establish that Governor DeSantis wields any such enforcement authority here, the Plaintiffs' claims against the Governor are barred by the Eleventh Amendment.[8]

\* \* \*

We therefore **ORDER and ADJUDGE** that the Motion to Dismiss [ECF No. 51] is **GRANTED**. The Clerk of Court is directed to **TERMINATE** the Defendant, Governor Ronald DeSantis, from this case.

**DONE AND ORDERED** in the Southern District of Florida on December 21, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[8] And we won't give the Plaintiffs leave to amend because they never asked—either in their Response or in a separate motion—for leave to amend their claims. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.").