UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22655-ALTMAN/Reid

**THE FARMWORKER ASSOCIATION
OF FLORIDA, INC.**, *et al.*,

    *Plaintiffs*,

v.

**GOVERNOR RONALD D. DESANTIS**,
*in his official capacity as Governor of the State of
Florida, et al.*,

    *Defendants*.
_____/

**<u>ORDER DENYING MOTION TO PROCEED ANONYMOUSLY</u>**

The Plaintiffs[1] have filed a Motion for Leave to Proceed Anonymously and to File Supporting Exhibits Under Seal (the "Motion") [ECF No. 29]. For the reasons we outline below, we **DENY** the Motion.[2]

**THE FACTS**

On May 10, 2023, Governor DeSantis signed into law Senate Bill 1718 ("SB 1718"), which amended FLA. STAT. § 787.07 to provide that "a person who knowingly and willfully transports into this state an individual whom the person knows, or reasonably should know, has entered the United States in violation of law and has not been inspected by the Federal Government since his or her unlawful entry from another country commits a felony of the third degree[.]" Complaint for Injunctive

---

[1] The Plaintiff, The Farmworker Association of Florida, Inc., "does not seek leave to proceed anonymously." Motion at 1 n.1. For purposes of this Order, we'll use the term "Plaintiffs" to refer to the *individual* Plaintiffs in this case.
[2] The Motion is ripe for resolution. *See* Defendants' Response to Plaintiffs' Motion for Leave to Proceed Anonymously (the "Response") [ECF No. 38]; Plaintiffs' Reply in Support of Motion to Proceed Anonymously (the "Reply") [ECF No. 43].

Relief and Declaratory Judgment (the "Complaint") [ECF No. 1] ¶¶ 64–66 (quoting FLA. STAT. § 787.07(1)). The Plaintiffs filed their Complaint on July 17, 2023, suing "Defendants Ronald D. DeSantis, Governor of the State of Florida, Ashley Moody, Attorney General of the State of Florida, Nicholas B. Cox, Statewide Prosecutor," and the state attorneys for all twenty of Florida's judicial circuits. *Id.* at 3. They allege that "Section 10 of [SB 1718], Ch. 2023-40, Laws of Fla. ('Section 10') unconstitutionally criminalizes the act of transporting a broad category of immigrants into Florida." *Id.* ¶ 1; *see also* Motion at 1 ("Plaintiffs bring this lawsuit challenging a law that will criminalize their families' and friends' travel into Florida at a time of increasingly violent anti-immigrant rhetoric in Florida and across the country."). We dismissed Governor DeSantis from this case on December 21, 2023. *See generally* Order Granting Motion to Dismiss [ECF No. 84].

Our Plaintiffs "belong to mixed-status families, churches, and communities." Motion at 1. "Their family members include U.S. citizens, Special Immigrant Juvenile Status ('SIJS') and Deferred Action for Childhood Arrivals ('DACA') applicants, and undocumented immigrants." *Ibid.* The Plaintiffs now move to proceed anonymously because they "fear the dangers posed by the public revelation of their identities, and that information of the utmost intimacy about their own or their loved ones' sensitive personal circumstances could become public." *Id.* at 2 (cleaned up). "Because this case involves children and highly sensitive details about the discrimination, fear, and trauma Plaintiffs and their loved ones have suffered," they argue, "anonymity is warranted here. Plaintiffs therefore seek leave to proceed anonymously, under the following initials: A.M., J.L., R.M., C.A., M.M., D.M., A.C., G.D.L. and M.G." *Ibid.*

## THE LAW

"A lawsuit is a public event. Parties who ask a court to resolve a dispute must typically walk in the public eye." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1242 (11th Cir. 2020). Reflecting this principle, the Federal Rules provide that "[e]very pleading" must "name all the parties[.]" FED. R. CIV.

P. 10(A); *see also Chiquita*, 965 F.3d at 1247 ("'Generally, parties to a lawsuit must identify themselves' in the pleadings." (quoting *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)). Rule 10(a) "does not merely further administrative convenience—'[i]t protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties.'" *Ibid.* (quoting *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011)). Because "[l]awsuits are public events," a party may only proceed anonymously in "exceptional cases[.]" *Frank*, 951 F.2d at 323. And there's a "strong presumption in favor of parties' proceeding in their own names." *Plaintiff B*, 631 F.3d at 1315.

"Whether a party's right to privacy outweighs the presumption of openness is a totality-of-the-circumstances question." *Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020). To proceed anonymously, a party must establish "a substantial privacy right [that] outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Chiquita*, 965 F.3d at 1247 (cleaned up). A court must therefore consider whether the party moving to proceed anonymously "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Ibid.* Along with these three factors, "a court 'should carefully review *all* the circumstances of a given case'" to determine whether a plaintiff's privacy concerns outweigh the general requirement of disclosure. *Ibid.* (quoting *Plaintiff B*, 631 F.3d at 1316). "Other factors to consider include whether the party seeking anonymity is a minor or faces a real threat of physical harm absent anonymity . . . . The court should also analyze whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant." *Ibid.*

## ANALYSIS

### I. Whether the Plaintiffs are Challenging Government Activity

The Plaintiffs plainly satisfy the first prong of the *Chiquita* test because they're challenging government action. "[I]n only a very few cases challenging governmental activity," however, "can

3

anonymity be justified." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 686 (11th Cir. 2001) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). The Plaintiffs insist that "[t]he fact that Plaintiffs are challenging government action weighs in favor of anonymity." Motion at 9. But that's not how we'd characterize the relevant framework: While there's "*more* reason *not* to grant [a plaintiff's] request for anonymity" when a plaintiff is "suing private individuals rather than a government agency," there *isn't* "more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government." *Frank*, 951 F.2d at 324 (emphasis in original). In other words, "the fact that [a plaintiff] is suing the [the government] does *not* weigh in favor of granting [the plaintiff's] request for anonymity." *Ibid.* (emphasis added); *see also Freedom From Religion Found., Inc. v. Emanuel Cnty. School Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015) ("It is not that suing the government weighs *in favor* of granting a request for anonymity; rather, the operative principle is that a suit against a private party weighs *against* a plaintiff's request for anonymity." (emphasis in original)); *Doe v. Strange*, 2016 WL 1168487, at *1 (M.D. Ala. Mar. 24, 2016) ("That [p]laintiffs are challenging governmental action here merely means that [d]efendants do not operate under the same threat of reputational damage that private defendants face."). This first factor, therefore, doesn't tilt to either side.

## II. Whether the Plaintiffs Would be Compelled, Absent Anonymity, to Admit an Intent to Engage in Illegal Conduct and thus Risk Criminal Prosecution

We'll skip the second prong of the *Chiquita* test for now and proceed straight to the *third* prong, which asks whether the Plaintiffs "would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Chiquita*, 965 F.3d at 1247. This factor favors the Plaintiffs. In challenging SB 1718, the Plaintiffs are admitting that they've engaged in—and plan to continue engaging in—"activity that Florida has newly criminalized—that is, driving or traveling with their noncitizen family members or members of the communities they serve into Florida." Motion at 13; *see also, e.g.*, Complaint ¶¶ 41–42 ("[Plaintiff A.M.] personally transports individuals to appointments with [USCIS] for fingerprinting and other services. Some immigrants in her nonprofit's

4

service area are directed to attend USCIS appointments in Jacksonville, even though they reside in Georgia. Many immigrants need her assistance because they entered the United States unlawfully and are ineligible for a driver's license. A.M. now fears that she will be exposed to felony charges for performing a key aspect of her job, and for doing what she believes to be morally just."); *id.* ¶ 44 ("[Plaintiff] J.L.'s work as a field coordinator entails travel outside the state of Florida approximately five times per year for trainings, conferences, and workshops dealing with leadership, activism, and workers' rights, among other subjects. During her trips, she often drives passengers, some of whom are immigrants, including undocumented immigrants.").

According to the Plaintiffs, their activity—"that is, driving or traveling with their noncitizen family members or members of the communities they serve into Florida"—"exposes them to mandatory arrest and detention [and] prosecution on felony charges[.]" Motion at 13. And the Defendants concede that the "Plaintiffs 'admit an intent to engage in criminal conduct[.]'" Response at 7 (quoting *Chiquita*, 965 F.3d at 1247).[3] A plaintiff's admission of illegal conduct—and of his intent to engage in future criminal conduct—unquestionably weighs in favor of anonymity. *See, e.g.*, *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (noting that "courts have allowed plaintiffs to use fictitious names" where the plaintiffs have "had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct"); *Strange*, 2016 WL 1168487, at *2 ("Because [p]laintiffs have alleged that they would like to engage in certain behaviors that may be considered proscribed under [the statute's] vague provisions,

---

[3] While the Defendants don't disagree that the Plaintiffs have admitted an intent to engage in criminal conduct, they urge us not to "grant this factor dispositive effect." Response at 7. We're well aware that the *Chiquita* factors aren't "meant to be dispositive" and that we "should carefully review *all* the circumstances of a given case [before] decid[ing] whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Frank*, 951 F.2d at 323. The Defendants also say that "[n]othing in Plaintiffs' declarations indicate [sic] that Plaintiffs *must* transport persons who have not been inspected." Response at 7. But that's irrelevant to the question we face here—*viz.*, whether the Plaintiffs have admitted an intent to engage in illegal conduct.

5

they would benefit from being allowed to proceed anonymously in this case."); *Free Speech v. Reno*, 1999 WL 47310, at *3 (S.D.N.Y. Feb. 1, 1999) ("[The] plaintiffs have established that disclosure of their actual identities may expose them to criminal prosecution and civil penalties. . . . . To deny them permission to proceed by pseudonym would either expose plaintiffs to further penalties and prosecution or, more likely than not, discourage them from pursuing their constitutional challenge."). This factor thus weighs in favor of the Plaintiffs.

### III. Whether the Plaintiffs Would be Compelled, Absent Anonymity, to Disclose Information of the Utmost Intimacy

In assessing the *second* prong of the *Chiquita* test—the most important factor here—we consider whether the Plaintiffs "would be compelled, absent anonymity, to disclose information of [the] utmost intimacy." *Chiquita*, 965 F.3d at 1247. The Plaintiffs contend that, "[b]ecause Section 10 criminalizes transporting or traveling with people based on their immigration history, public disclosure of Plaintiffs' identities—or those of their family members and loved ones—necessarily places their immigration status, or lack thereof, at issue. This is highly sensitive and personal information of 'utmost intimacy.'" Motion at 10. They add that several Plaintiffs "have applications for relief pending on the basis of certain humanitarian grounds set forth under federal immigration law." *Id.* at 12. "These applications are based on, among other factors, the extreme harm that Plaintiff M.M.'s minor U.S. citizen children would face if their mother were deported (Cancellation of Removal for Non-Lawful Permanent Residents), as well as Plaintiff D.M.'s long history in the U.S. after having been brought into the country as a baby (DACA)." *Ibid.* "Additionally," the Plaintiffs continue, "disclosing the identity of C.A. would risk revealing the identity of her grandson, who has applied for relief based on his status as a survivor of child maltreatment (pending petition for Special Immigrant Juvenile Status)." *Ibid.* In short, the Plaintiffs say that "[r]equiring [them] to disclose their identities and immigration statuses will make these highly sensitive and traumatic facts a matter of public record." *Ibid.*

6

While these facts may be "intimate" in the colloquial sense, courts in our Circuit have been clear that "information of the utmost intimacy" is a limited category, "historically yield[ing] a confined application." *Doe #1 v. Austin*, 2022 WL 2116797, at *3 (M.D. Fla. June 10, 2022) (Badalamenti, J.). In *Plaintiff B*, in fact, the Circuit noted that "courts have often denied the protection of anonymity in" situations many people would consider intimate, including "where plaintiffs allege sexual assault, even when revealing the plaintiff's identity [could] cause her to suffer some personal embarrassment." *Plaintiff B*, 631 F.3d at 1316 (cleaned up); *see also Does v. Swearingen*, 2019 WL 4386936, at *2 (M.D. Fla. Sept. 13, 2019) (Mendoza, J.) ("[C]ourts have refused requests to proceed anonymously in actions involving economic matters, challenges to selective service registration, sexual harassment under Title VII, termination of employment due to alcoholism, and AIDS . . . . Moreover, even sexual assault (a matter indisputably of a highly sensitive and personal nature) has not been found to be so compelling in regard to its intimate nature as to permit plaintiffs to proceed anonymously in instances where the plaintiff is pursuing an action against the alleged abuser." (cleaned up)).

Indeed, courts have been reluctant to grant anonymity in cases (like ours) that *don't* involve "abortion, the use of birth control, homosexuality, sexually-exploited minor children, [or] personal religious beliefs." *Austin*, 2022 WL 2116797, at *3; *see also S. Methodist Univ.*, 599 F.2d at 712–13 ("Where the issues involved are matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." (cleaned up)); *Neverson*, 820 F. App'x at 988 ("[C]ourts have permitted plaintiffs to proceed anonymously in cases involving mental illness, homosexuality, and transsexuality because the social stigma attached to the plaintiff's disclosure was found to be enough to overcome the presumption of openness in court proceedings." (cleaned up)).

The Plaintiffs' principal contention is that their "immigration status[es], or lack thereof," qualify as "highly sensitive and personal information of 'utmost intimacy.'" Motion at 10. In support of this position, they tell us that, "[a]s a general matter, courts regularly recognize that revealing someone's immigration status could lead to criminal prosecution, harassment, and intimidation." *Ibid.* (cleaned up). "This is particularly true of undocumented immigrants," they add, "who face especially severe repercussions if their identities are revealed." *Id.* at 10–11. For two reasons, we disagree.

*One*, in saying so, the Plaintiffs are conflating two distinct prongs of the *Chiquita* test. The Plaintiffs, remember, maintain that their immigration statuses should be considered "highly sensitive and personal information of 'utmost intimacy'" because "courts regularly recognize that revealing someone's immigration status could lead to criminal prosecution, harassment, and intimidation." Motion at 10. But the risk of criminal prosecution is a separate *Chiquita* factor—one we've already weighed in their favor. To balance this factor in the Plaintiffs' favor a second time would inappropriately conjoin two distinct factors—thereby lessening the burden plaintiffs who challenge government action would face in establishing their right to proceed anonymously.

Resisting, the Plaintiffs say that courts "frequently allow [undocumented immigrants] to proceed anonymously." *Id.* at 11 (first citing *Doe v. Hobson*, 300 F.R.D. 576, 578 (M.D. Ala. 2014) (Watkins, C.J.); and then citing *Cent. Ala. Fair Hous. Ctr. v. Magee*, 835 F. Supp. 2d 1165, 1169 (M.D. Ala. 2011) (Thompson, J.), *vacated on other grounds by Cent. Ala. Fair Hous. Ctr. v. Comm'r, Ala. Dep't of Revenue*, 2013 WL 2372302 (11th Cir. May 17, 2013)). But, in both of these cases, the requests to proceed anonymously were essentially unopposed. *See* Hearing Tr., *Cent. Ala. Fair Hous. Ctr. v. Magee*, 11-cv-00982 (M.D. Ala. Oct. 23, 2011), ECF No. 68 at 6:23 ("[W]ith [one] caveat, we have no objection to the motion [to proceed under a pseudonym]."); *Hobson*, 300 F.R.D. at 577 ("Defendants do not firmly oppose or support [p]laintiffs' request to withhold their identities from the public; they simply remain skeptical of [p]laintiffs' entitlement to claim a privacy interest in their immigration

8

statuses."). And, in a third (out-of-Circuit) case the Plaintiffs rely on, *R.F.M. v. Nielsen*, all the plaintiffs had "sought Special Immigrant Juvenile ('SIJ') status" and had "been declared dependent on the New York Family Court" because they were "victims of abuse, neglect, or abandonment." 365 F. Supp. 3d 350, 359, 371 (S.D.N.Y. 2019). Those are obviously not our facts. None of our Plaintiffs are minors, and (as far as we're aware) none have been declared "dependent" on our court system—for reasons of abuse, neglect, or anything else. We thus do not agree that these cases support the Plaintiffs' position here.

*Two*, immigration status isn't one of the limited categories of facts courts typically view as "intimate" for purposes of granting anonymity. On the contrary, courts around the country have repeatedly held that "undocumented status . . . is not highly sensitive nor personal[.]" *Doe I v. City of Alabaster, Ala.*, 2012 WL 13088882, at *5 (N.D. Ala. Apr. 26, 2012) (Hopkins, J.); *see also Doe v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004) ("[U]nlawful or problematic immigration status is simply not the type of 'personal information of the utmost intimacy' that warrants abandoning the presumption of openness in judicial proceedings."); *Day v. Sebelius*, 227 F.R.D. 668, 679 (D. Kan. 2005) ("The court . . . appreciates the fact that undocumented alien status is a sensitive matter. However, particularly in this day and age . . . this sort of information strikes the court as fundamentally distinguishable from the type of 'highly personal' information that has led other courts to grant leave to proceed anonymously[.]"). And we agree with these judges that—for purposes of the *Chiquita* test— immigration status is *not* "information of the utmost intimacy." *Chiquita*, 965 F.3d at 1247.

Recognizing these precedents, the Plaintiffs add that they (some of them anyway) "have applications for relief pending on the basis of certain humanitarian grounds set forth under federal immigration law"—and (they insist) "[m]atters such as these, which pertain to past traumatic experiences and mistreatment of minors, are of 'utmost intimacy.'" Motion at 12; *see also* Reply at 6 ("Plaintiffs do not seek anonymity simply to avoid public disclosure of their immigration statuses, but

9

because of what their particular statuses reveal about past trauma and abuse, and that of their minor children and other relatives."). For example, the Plaintiffs say that "disclosing the identity of C.A. would risk revealing the identity of her grandson, who has applied for relief based on his status as a survivor of child maltreatment[.]" Motion at 12; *see also* Reply at 7 ("C.A., a grandmother in her seventies who fled an oppressive socialist regime in Nicaragua, is the sole caretaker for her teenage grandson. Having lost a son to suicide, she is very concerned about her grandson's anxiety and mental health should his identity be revealed through his connection with her."). The Plaintiffs insist that "subsequent pleadings will contain sensitive, personal information about . . . hardships they and their family members have faced, including child maltreatment and sensitive medical and mental health issues[.]" Motion at 2. "Requiring these Plaintiffs to disclose their identities and immigration statuses will make these highly sensitive and traumatic facts a matter of public record." *Id.* at 12.

As a threshold matter, it's not clear to us *why* the Plaintiffs would be "compelled," absent anonymity, to reveal details about their family members' traumatic life experiences—much less their medical- and mental-health issues. And, if these details do become relevant in our case, we think a protective or confidentiality order would be sufficient to prevent this sort of sensitive information from reaching the public. In their Reply, the Plaintiffs direct our attention to a "paradigm of cases in which identifying the would-be Doe would *harm* innocent non-parties." Reply at 7 (quoting *Doe v. Mass. Inst. of Tech. ("MIT")*, 46 F.4th 61, 71 (1st Cir. 2022) (emphasis added)). Here, again, the Plaintiffs seem to be confusing two different factors: "utmost intimacy" with "real threat of physical harm" (which we've yet to address).

In any event, the two "paradigm" cases the First Circuit identified in *MIT* are just very different from ours. In *Doe v. Eason*, the court granted anonymity because "revealing the [p]laintiff's identity [would] necessarily reveal the identity of her daughter." 1999 WL 33942103, at *3 (N.D. Tex. Aug. 5, 1999). But, in that case, the plaintiff was a public-school teacher whose daughter had been "sexually

molested by the nine-year-old son" of a school administrator, and the plaintiff alleged that she had been retaliated against for reporting the assault. *Id.* at *1. In other words, in *Eason*, the sexual abuse of the non-party minor was a central allegation in the case. Similarly, in *Doe v. Trustees of Dartmouth College*, the District of New Hampshire noted, in granting anonymity, that, "[s]hould plaintiff be publicly identified, Sally [a pseudonym] would likely be identified as well, and Sally has a stronger case for anonymity." 2018 WL 2048385, at *6 (D.N.H. May 2, 2018). Notably, this second case (*Trustees of Dartmouth College*) involved a violent sexual encounter between the plaintiff and Sally, who each accused the other of sexual assault. *Id.* at *1.[4]

Our case, by contrast, has *nothing to do* with the "past traumatic experiences" described in the Plaintiffs' family members' immigration applications. Our case, rather, is about whether § 10 of SB 1718 is preempted by federal law and whether it violates the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague. *See* Complaint ¶¶ 127–50. We're thus not persuaded that the Plaintiffs would be compelled, absent anonymity, to reveal any information about the "trauma . . . their loved ones have suffered." Motion at 2.

But, even if we were to consider the sensitive information the Plaintiffs have supplied about their family members (*non*-parties to this case), we still don't think that information rises to the level of "utmost intimacy." For example, the Plaintiffs tell us that "subsequent pleadings will contain sensitive, personal information about hardships they and their family members have faced, including . . . sensitive medical and mental health issues[.]" *Ibid.* Even in cases involving mental illness, however, "the fact [that] information about a litigant's mental health may be revealed, without more, does not permit a party to proceed anonymously." *Doe v. Garland*, 341 F.R.D. 116, 118 (S.D. Ga. 2021) (Cheesbro, Mag. J.); *see also Doe v. Berkshire Life Ins. Co. of Am.*, 2020 WL 3429152, at *2 (D. Col. June

---

[4] Again, in our Circuit, courts "often den[y] the protection of anonymity in cases where plaintiffs allege sexual assault[.]" *Plaintiff B*, 631 F.3d at 1316.

11

23, 2020) ("Plaintiff asserts that his mental illnesses, including Post Traumatic Stress Disorder . . . are highly sensitive in nature, particular when viewed in the context of his former position as president and CEO of a nationwide business . . . . While the [c]ourt is sympathetic to plaintiff's privacy concerns, the [c]ourt does not find that this case presents issues that are so highly personal or sensitive in nature so as to constitute an exceptional circumstance requiring leave to use a pseudonym."); *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1142–45 (N.D. Cal. 2016) (denying motion to proceed anonymously where the plaintiff experienced anxiety and "regular panic attacks" because "potential embarrassment or increased anxiety brought on by litigation does not justify anonymity").

And the same goes for medical history. *See, e.g.*, *Doe #1–#14 v. Austin*, 2021 WL 10395929, at *2 (N.D. Fla. Dec. 1, 2021) (Winsor, J.) ("[V]accination status is not the type of matter the Eleventh Circuit has found to be of 'the utmost intimacy.' . . . . A medical history that a plaintiff puts at issue is generally insufficient to meet the applicable standard [for 'utmost intimacy'] . . . . Courts routinely consider cases—medical malpractice cases, for example—involving medical histories of plaintiffs who sued in their own names. And to the extent there are sensitive medical records or information that becomes relevant, privacy interests can be addressed through a protective order.").

Lastly, the Plaintiffs contend that requiring them to disclose their identities will reveal "highly sensitive and traumatic facts" about their family members' "past traumatic experiences[.]" Motion at 12. Again, the Plaintiffs never explain why this is so. Instead, they say only that "[r]equiring these Plaintiffs to disclose their identities and immigration statuses will make these highly sensitive and traumatic facts a matter of public record." *Ibid.* Without more, we're not sure why this problem cannot be adequately addressed with a protective order. *See CTH 1 Caregiver v. Owens*, 2012 WL 2572044, at *3 (D.S.C. July 2, 2012) (denying the plaintiff's request to proceed anonymously and holding that, "[w]hile there are allegations in the complaint that one of the nonparty disabled persons was sexually

assaulted and underwent an abortion over thirty years ago, [p]laintiff's identity can be disclosed while the identity of the nonparty persons . . . can be protected through a confidentiality order").

In any event, a person's past trauma doesn't rise to the level of "utmost intimacy." Indeed, plaintiffs are frequently forced to proceed under their own names in cases involving serious trauma. *See, e.g.*, *R.A. v. Niles*, 2015 WL 13424446, at *1 (N.D. Ga. May 21, 2015) (Ross, J.) (denying motion to proceed anonymously in a case involving a plaintiff who "filed suit against a number of government officials stating multiple causes of action based on the alleged abuse, self-harming behaviors, and suicide attempt [p]laintiff underwent while in the custody of the Georgia Department of Juvenile Justice"); *Doe v. Family Dollar Stores, Inc.*, 2007 WL 9706836, at *2 (N.D. Ga. Oct. 17, 2007) (Hagy, Mag. J.) (denying motion to proceed anonymously where the plaintiff said that he would be required "to reveal intimate and traumatic details" that would "embarrass and humiliate him because he will be known as a sexual assault victim"). These traumatic experiences, in short—even taken together with the medical- and mental-health histories of our Plaintiffs' family members—simply don't qualify as facts of "utmost intimacy" under our precedents.

In saying so, we think it important to reiterate that *all* of our Plaintiffs are adults. *See* Motion at 15 ("It . . . bears noting that one of the Plaintiffs, although no longer a minor, is still a teenager, and two are in their seventies[.]"). Insofar as the Plaintiffs are worried that "revealing Plaintiffs' identities could . . . expose the identities of their minor children and grandchildren," *id.* at 12–13, the Plaintiffs will be free to negotiate a protective or confidentiality order with the Defendants—and the Court would be happy to enter one. But the minority of some of the Plaintiffs' family members doesn't tip the scales here. *See Plaintiff B*, 631 F.3d at 1316 ("[In] evaluating whether to let a plaintiff proceed to trial anonymously, courts have . . . looked at . . . whether *the plaintiffs* were minors . . ." (emphasis added)); *Chiquita*, 965 F.3d at 1247 ("Other factors to consider include whether *the party* seeking anonymity is a minor . . . ." (emphasis added)).

If we were to grant anonymity to every litigant whose extended family included someone with a sensitive—even traumatic—personal history, we'd have to grant anonymity to almost every litigant in America. But that would flip the law—which stresses that "[l]awsuits are public events" and that parties may proceed anonymously only in "exceptional cases," *Frank*, 951 F.2d at 323—on its head. The Plaintiffs have thus failed to show that this second factor favors anonymity here.

### IV. Whether the Plaintiffs Faces a Real Threat of Physical Harm Absent Anonymity

The final *Chiquita* factor asks "whether the party seeking anonymity . . . faces a real threat of physical harm absent anonymity." *Chiquita*, 965 F.3d at 1247. The Plaintiffs claim that they "fear being targeted, threatened, and facing potential violence if their identities are public." Motion at 14. Having already been "called racial slurs, threatened, and suffered discrimination because they were perceived to be immigrants or helping immigrants," the Plaintiffs now "fear even greater harassment, discrimination, and violence targeting themselves and their families should their identities be revealed as challenging the state of Florida[.]" *Id.* at 14–15. Specifically, the "Plaintiffs fear that disclosure of their identities could lead to retaliation threatening their housing and livelihoods, and the stability of their families . . . . As such, denying Plaintiffs leave to proceed anonymously places them at real risk of harassment, threats, or even violence, and poses serious threats to their families' economic stability, safety, and wellbeing." *Id.* at 15. The Defendants counter that the "Plaintiffs' contentions regarding their fear of intimidation and harassment fail to meet the high standard required for anonymous treatment." Response at 8. And we agree.

Remember, our job is to determine whether, absent anonymity, a party seeking anonymity would face a "real danger of physical harm[.]" *Frank*, 951 F.2d at 324. A party seeking to proceed anonymously must "produce[ ] particularized evidence demonstrating that he or she would be subjected to violence." *Fla. Action Comm., Inc. v. Seminole Cnty.*, 2016 WL 6080988, at *3 (M.D. Fla. Oct. 18, 2016) (Byron, J.). At this step, generalized fear of hostility in the community is not enough: "The

threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Stegall*, 653 F.2d at 186. In fact, in *Chiquita*, the Eleventh Circuit affirmed a district court's refusal to grant anonymity *even after* Colombian paramilitaries "threatened and attacked [the] named bellwether plaintiff and her family four months after her deposition." 965 F.3d at 1248. As the Eleventh Circuit explained:

> True, no one seems to dispute that someone threatened and attacked the bellwether plaintiff and her family. But the only credible evidence to suggest that paramilitaries assaulted her and her family *for her role here* is temporal proximity. A four-month connection, however, is shaky support standing alone. And there is evidence pointing the other way. For example, the bellwether plaintiff's deposition was privileged and highly confidential, suggesting that paramilitaries could not have known about the deposition. There is also evidence showing that the alleged incidents were part of a domestic dispute unrelated to this litigation. So the district court acted within its discretion when it held that there was "insufficient evidence of a causal connection between the . . . attack and litigation activity in this MDL proceeding to justify continued use of pseudonyms."
>
> Lacking specific evidence, the pseudonymous appellants cite general evidence showing that those who oppose paramilitary groups or paramilitary-affiliated entities face risks of paramilitary violence. But this evidence does not compel the conclusion that the MDL plaintiffs face those risks. Indeed, their evidence focuses on human rights defenders who protest paramilitary activity in Colombia, seek land restitution in Colombia, or oppose paramilitary-affiliated entities in Colombia. The evidence does not compel the finding that litigants pursuing tort claims against a paramilitary-affiliated entity in the United States face similar risks of harm.

*Ibid.* (emphasis added).

Even more so than in *Chiquita*, our Plaintiffs have failed to adduce "specific evidence" for their claim that they face a "real threat of physical harm" *for their role in this case*. The Plaintiffs' declarations mainly show that the Plaintiffs have dealt with (unrelated) racial discrimination in the past and that they fear a hostile public reaction to this lawsuit. Some of the Plaintiffs have experienced harassment on account of their race or immigration status. But there's no indication that any of these past experiences are in any way connected to this lawsuit, and none of the Plaintiffs has "established real, imminent personal danger." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). So, for instance, A.M. attests that:

15

> I have received threatening messages in the past because of the work we do on behalf of immigrants. When I first opened our office in [redacted] Georgia, I sometimes would arrive in the morning and find notes left on the door. I remember one note said, "Wetback, go back to Mexico." I also got threatening notes on my door from "the Brotherhood." I'm not sure if the brotherhood referred to the Klan or some other extremist group. These notes also said things like "Get out of town," "We don't want you here," and "You are being watched." . . . .
>
> I am also deeply concerned that if my status as a Plaintiff became public, I may begin receiving threatening messages again, or much worse.

Decl. of A.M. [ECF No. 29-1] ¶¶ 4, 10. As in *Chiquita*, however, none of these messages had anything to do with this case. In fact, they seem to suggest that members of her community *already know* about the work A.M. does with immigrants in Georgia. Similarly, J.L. says that "I . . . feel vulnerable that I could be tracked, targeted, or harassed by racist extremist groups," but J.L. never tells us why he or she feels this way or why this litigation might generate that level of extremist antipathy. Decl. of J.L. [ECF No. 29-2] ¶ 6. So too with C.A., who says (in the most general and speculative way) that, "if people find out that I am bringing this case, they *could* target and harass us more, or even do something violent," Decl. of C.A. [ECF No. 29-4] ¶ 16 (emphasis added), and D.M., who attests that "I've heard a lot of really ugly things people say about immigrants and especially undocumented immigrants, and *this makes me think* people would discriminate against me or try to hurt me or my family if they knew I'm undocumented," Decl. of D.M. [ECF No. 29-6] ¶ 6 (emphasis added).[5]

R.M. tells us that, "[i]n the eighties, I saw white supremacist convoys driving down the highway in southside [redacted] . . . . The white supremacist movement in Georgia has not gone away. In [redacted] Georgia, I have had arguments with strangers just for speaking Spanish in public. Racist and anti-immigrant views are pervasive. Once while wearing my Roman collar after Mass, I went to a restaurant where I was accosted by a man who told me to stop speaking Spanish because we were in

---

[5] D.M. adds that "[s]ome of the stories I've heard make me so scared that I avoid even trying to speak Spanish around strangers, so I don't set them off or cause problems for myself." Decl. of D.M. ¶ 6. That D.M. has heard "stories" about *other* Spanish-speakers being discriminated against is (it goes without saying) not nearly sufficient here.

16

America." Decl. of R.M. [ECF No. 29-3] ¶ 7. If the fourth-month gap between the harassment and the motion was insufficient to sustain the plaintiffs' motion in *Chiquita*, the almost-forty-year gap between what R.M. observed in "the eighties" and our lawsuit constitutes very "shaky support" for anonymity. *Chiquita*, 965 F.3d at 1248. And, while it appears that someone discriminated against R.M. "once" because of his race and religion—and some other times because of his ethnicity—he never tells us when that was. The same goes for M.M., who writes:

> I know that many people right now especially have acted in frightening, racist and anti-immigrant ways. It terrifies me to think that I could be putting my children in danger from these kinds of people by being a Plaintiff in this lawsuit. It already hurts me to know that we face discrimination and even danger based on the color of our skin and the fact that we're Mexican. For example, because I speak Spanish, people have said cruel things, and asked me why I'm here and told me to go back to my country.

Decl. of M.M. [ECF No. 29-5] ¶ 8. A.C.'s fears likewise fit into this category. *See* Decl. of A.C. [ECF No. 29-7] ¶¶ 8, 10 ("I have faced hostile and racist comments in my community, especially when I speak Spanish . . . . Since the new law passed, I am worried that my family and I will face more discrimination.").[6]

We don't condone the unacceptable racism and xenophobia many of our Plaintiffs have described. And we don't doubt the veracity of their claims. Still, they've failed to "produce[ ] particularized evidence demonstrating that [they] would be subjected to violence," *Fla. Action Comm., Inc.*, 2016 WL 6080988, at *3—much less that they'd be subjected to violence *because* of their role in this case. As we've said, a plaintiff's "generalized assertions of fear do not outweigh the customary

---

[6] J.D.L. and M.G. don't allege that they fear for their physical safety at all. J.D.L. says: "[I] am very nervous that people will learn that I am undocumented because I have filed this lawsuit. If they do, I fear that I will lose my job, that my family will be treated differently because I entered the country without permission, and that I will be targeted by law enforcement for deportation." Decl. of J.D.L. [ECF No. 29-8] ¶ 8. M.G. is fearful "to have people find out that I have filed this lawsuit challenging important officials who work for the Florida government. I fear that people will retaliate against me by calling federal immigration authorities to get me deported. I am also afraid that my husband and I will lose our jobs." Decl. of M.G. [ECF No. 29-9] ¶¶ 9–10. Since this *Chiquita* factor asks "whether the party seeking anonymity . . . faces a real threat of physical harm absent anonymity," *Chiquita*, 965 F.3d at 1247, these declarations are plainly insufficient to satisfy J.D.L.'s and M.G.'s burden.

and constitutionally-embedded presumption of openness in judicial proceedings." *Gerzon v. IHOP Rest. Corp.*, 2017 WL 1957075, at *4 (M.D. Fla. Apr. 19, 2017) (McCoun, Mag. J.), *report and recommendation adopted*, 2017 WL 1954821 (M.D. Fla. May 10, 2017) (Whittemore, J.). Because the Plaintiffs haven't given us *any* specific evidence to support their view that this litigation is likely to expose them to a "real danger of physical harm," *Frank*, 951 F.2d at 324, this factor weighs heavily against the Plaintiffs.[7]

*　　*　　*

In the wise words of one of our colleagues, "[c]ourts are public institutions which exist for the public to serve the public interest. Even a superficial recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Col. 1996). This case does not strike us as one of those rare or exceptional cases in which a plaintiff's right to privacy outweighs the need for the defendant and the public to know the plaintiff's identity.

Because our Plaintiffs' privacy interests don't outweigh the "customary and constitutionally-embedded presumption of openness in judicial proceedings," *Stegall*, 653 F.2d at 186, the Plaintiffs must identify themselves in their pleadings. While we understand that the Plaintiffs feel "vulnerable to stress from public exposure," Motion at 15, the same could be said of every plaintiff who, with or without counsel, challenges government action. In almost all such cases, though, "those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Femedeer*,

---

[7] In *Chiquita*, the Circuit added that we could "also analyze whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant." *Chiquita*, 965 F.3d at 1247. The Plaintiffs claim that "there is no threat of fundamental unfairness" to the Defendants in this case, *see* Motion at 15, and the Defendants don't contest this point, *see generally* Response. We agree with the Plaintiffs, then, that this factor favors anonymity. Still, given all the circumstances we've outlined here, the Plaintiffs have failed to show that this is an "exceptional case"—and, therefore, that they should be permitted to proceed anonymously. *See Doe v. Rollins Coll.*, 2017 WL 11610361 (M.D. Fla. Mar. 22, 2017) (Spaulding, Mag. J.) (noting that the "[d]efendants have not shown [ ] how the litigation would pose a unique threat of fundamental unfairness to them if John Doe's identity is not revealed" but concluding, based on the totality of the circumstances, that "this not an exceptional case in which plaintiff may proceed under a fictitious name").

227 F.3d at 1246. Since a lawsuit is a "public event," a plaintiff cannot be permitted to proceed anonymously except in "exceptional cases." *Frank*, 951 F.2d at 324. And we don't think this is one of those.

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Plaintiffs' Motion for Leave to Proceed Anonymously [ECF No. 29] is **DENIED**.

2. The Motion to file supporting declarations under seal is also **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on February 8, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**