**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-cv-22655-ALTMAN/Reid

**THE FARMWORKER ASSOCIATION**
**OF FLORIDA, INC.,** *et al.*,

    *Plaintiffs*,

v.

**JAMES UTHMEIER,** *in his official capacity*
*as Attorney General of the State of Florida*, *et al.*,

    *Defendants*.[1]
_____/

## ORDER ON SCOPE OF PRELIMINARY INJUNCTION

On May 22, 2024, we issued our Order Granting the Plaintiffs' Motion for Preliminary Injunction [ECF No. 99], in which we found that "the Plaintiffs are likely to prevail on their claim that Section 10 of SB 1718 is preempted by federal law—and that they have satisfied each of the other elements of their preliminary-injunction request." *Id.* at 40. In granting the Plaintiffs' Motion for Preliminary Injunction, we said that "we remain bound by the pronouncements of [the Eleventh] Circuit, which has held that the 'unlawful transport and movement of aliens' is a fully preempted field." *Id.* at 39 (quoting *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1264 (11th Cir. 2012)). We also noted that "a state 'has no legitimate interest in enforcing an unconstitutional law.'" *Id.* at 37 (cleaned up) (quoting *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024)); *see*

---

[1] The original named Defendant in this case, Ashley Moody, resigned from her position as the Attorney General of Florida on January 21, 2025, when Governor Ron DeSantis appointed her to be a United States Senator. The current Attorney General, James Uthmeier, has been automatically substituted as the Defendant. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

*also Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013) ("[T]he public has no interest in the enforcement of what is very likely an unconstitutional statute.").

On May 23, 2024, we entered a Supplemental Order on the Scope of the Preliminary Injunction (the "Supplemental Order") [ECF No. 100]. In that Supplemental Order, we said that the preliminary injunction in this case—like the injunction the Eleventh Circuit affirmed in *Georgia Latino*—would extend statewide. But, because the parties' original briefing was relatively scant on this issue—and given the "national conversation taking place in both the legal academy and the judiciary concerning the propriety of courts using universal injunctions as a matter of preliminary relief," *Walls v. Sanders*, 733 F. Supp. 3d 721, 751 (E.D. Ark. May 7, 2024) (Rudofsky, J.) (cleaned up)—we invited additional briefing on the scope of the injunction, *see* Order Inviting Further Briefing [ECF No. 101].

The parties have now submitted supplemental briefing on this important question. *See* Plaintiffs' Supplemental Brief on the Scope of the Injunction (the "Plaintiffs' Supplemental Brief") [ECF No. 104]; Defendants' Supplemental Brief on the Scope of the Injunction (the "Defendants' Supplemental Brief") [ECF No. 105].[2] Our Plaintiffs, the Farmworker Association of Florida ("FWAF") and several of its members, say that "statewide injunctions do not present many of the primary concerns that have animated the debate over nationwide injunctions," and that a statewide injunction is particularly appropriate to "advance the basic purpose of [the] preemption doctrine . . . and ensure the smooth functioning of the federal immigration scheme." Plaintiffs' Supplemental Brief at 2–3. The Defendants counter that a statewide injunction "would still be universal and would contradict the principle that equitable relief should be limited to the parties before the Court who have shown that they are entitled to relief[.]" Defendants' Supplemental Brief at 2.

---

[2] The Defendants also filed a Motion for Reconsideration [ECF No. 106], which we'll resolve in a separate order.

Our analysis on this issue will proceed in three parts. We'll begin by comparing nationwide and statewide injunctions, and we'll discuss the relevant differences between these two "sub-species" of universal injunctions. Next, we'll explain why—despite these differences—we believe that a statewide injunction isn't appropriate in our case. Finally, we'll narrow the scope of the injunction to cover *only* the Plaintiffs who have demonstrated their standing to sue.

I.   **Statewide Injunctions Differ from Nationwide Injunctions**

One of the Defendants' principal arguments is that both nationwide and statewide injunctions are "sub-species" of "universal injunctions"—which lack any "historical or statutory grounding[.]" Defendants' Supplemental Brief at 11. And we agree with the Defendants that universal injunctions—whether statewide or nationwide—"enjoin a relevant government actor from enforcing the law against anyone who might be subject to the law and thus suffer the same ill[.]" *Ibid.* Still, and for two reasons, we reject the Defendants' broader premise that statewide and nationwide injunctions are effectively *identical*.

*First*, courts routinely grant statewide injunctions where (as here) the plaintiffs have shown a strong likelihood of success on the merits of their claim that a state law is preempted. *See, e.g.*, *Ga. Latino*, 691 F.3d at 1267 (affirming district court's order granting a statewide preliminary injunction against the enforcement of Section 7 of HB 87); *Odebrecht Constr.*, 715 F.3d at 1290 (affirming district court's decision to grant a statewide preliminary injunction in preemption challenge brought by a single plaintiff because "the Cuba Amendment . . . . reaches far beyond the federal law in numerous ways and undermines the President's exercise of the discretion afforded him by Congress to direct our Nation's economic policy towards Cuba" and because "frustration of federal statutes and prerogatives [is] not in the public interest" (cleaned up)); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (affirming district court's decision to grant a statewide preliminary injunction where the relevant statute was preempted by federal law); *Lozano v. City of Hazleton*, 724 F.3d 297, 323 (3d Cir. 2013)

(same); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 750 (10th Cir. 2010) (affirming preliminary injunction prohibiting the State of Oklahoma from enforcing laws "that regulate illegal immigration and verification of employment eligibility").

The Defendants respond that federal courts don't "'routinely grant statewide injunctions' in cases involving preemption or facial challenges" and insist that the opinions the Plaintiffs rely on are "drive-by rulings" that lack "precedential effect." Defendants' Supplemental Brief at 12. But the overwhelming weight of authority from federal courts around the country (including in the Eleventh Circuit) confirms that statewide injunctions remain a viable tool for district courts because "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Florida v. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1281–82 (11th Cir. 2021) ("[A] federal district court may issue a nationwide, or 'universal,' injunction in appropriate circumstances. But notably, those appropriate circumstances are rare. A [universal] injunction may be warranted where it is necessary to provide complete relief to the plaintiffs, to protect similarly situated nonparties, or to avoid the chaos and confusion of a patchwork of injunctions. Or universal relief may be justified where the plaintiffs are dispersed throughout the United States, *when immigration law is implicated, or when certain types of unconstitutionality are found*." (cleaned up & emphasis added)). The only opinion the Defendants rely on is an unpublished dissent in a case with very different facts from ours. *See HM Florida-Orl, LLC v. Governor of Fla.*, 2023 WL 6785071, at *5 (11th Cir. Oct. 11, 2023) (Brasher, J., dissenting) ("A district court can't enter an overbroad injunction just because it's dealing with an overbroad statute. To hold otherwise, the majority conflates the merits of a legal claim with the scope of the remedy for that claim. The First Amendment overbreadth doctrine is relevant to the former, but not the latter.").

*Second*, many of the issues plaguing nationwide injunctions—which, as of this writing, may still be issued "in appropriate circumstances," *viz.*, when "necessary to provide complete relief to the

4

plaintiffs," *Georgia v. President of the United States*, 46 F.4th 1283, 1303–04 (11th Cir. 2022)—are either inapplicable to statewide injunctions or else apply to a far lesser degree. For example, critics of nationwide injunctions, including Justice Gorsuch, have rightly warned that injunctions with a "cosmic" scope incentivize forum shopping and gamesmanship. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of a stay) ("As the brief and furious history of the regulation before us illustrates, the routine issuance of universal injunctions is patently unworkable, sowing chaos for litigants, the government, courts, and all those affected by these conflicting decisions."). And the Eleventh Circuit has expressed similar concerns:

> By cutting off parallel lawsuits, nationwide injunctions frustrate foundational principles of the federal court system. They encourage gamesmanship, motivating plaintiffs to seek out the friendliest forum and rush to litigate important legal questions in a preliminary posture. They disturb comity by hindering other courts from evaluating legal issues for themselves. And they escalate pressure on the Supreme Court docket by limiting percolation and raising the stakes of individual lower-court decisions . . . . [N]onuniformity is a deliberate feature of our federal court system, and Congress—not one of the 94 federal district courts or 12 regional circuit courts—is best positioned to choose when to depart from that norm.

*Georgia*, 46 F.4th at 1304–05, 1307.

But these concerns don't apply *as much* in situations like ours. Statewide injunctions do not create "boundless opportunit[ies] to shop for a friendly forum." *New York*, 140 S. Ct. at 601. In fact, by definition, statewide injunctions don't affect other states at all. A simple illustration should bring this point home. Imagine a hypothetical case in which a plaintiff manages to persuade a district judge in one state to enter a nationwide injunction. If the defendant takes an interlocutory appeal—as it would be authorized to do, *see* 28 U.S.C. § 1292(a)(1) ("Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court[.]")—then one of two things will happen: Either the

5

injunction will be affirmed or it will be reversed. If it's reversed, then all citizens (both within the enjoining circuit and without) get redress—though note that, even here, "foreign" citizens would have suffered some irreversible harm from having had to live (for a time) under the terms of an illegal injunction imposed by a judge in a far-off state.

The far more problematic scenario, however, presents itself if the injunction is affirmed. In that case, the citizens of "foreign" circuits will be treated very differently—and perhaps worse—than the citizens of, say, the Middle and Northern Districts of Florida would be in a case where the Eleventh Circuit affirms a *statewide* injunction issued in the Southern District. In the case of a nationwide injunction, after all, the citizens of states *outside* the enjoining district's circuit will, for two reasons, have little (or no) recourse to seek relief from the injunction. *One*, since the plaintiff has already won a nationwide injunction, he'll have little (or no) incentive to bring *additional* lawsuits around the country—meaning that citizens in these other states will have no power to litigate in their own districts (or to appeal to their own circuits) the far-off judge's injunction. *Two*, without additional litigation, there will be no circuit split—making it much more difficult for the out-of-circuit residents to persuade the U.S. Supreme Court to overturn the decision of the enjoining judge's circuit. *See* SUP. CT. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only for compelling reasons."). None of this is true with statewide injunctions, where *only* citizens of the enjoining state are affected—giving *every* citizen the opportunity to have his or her own circuit (as opposed to some distant circuit) pass on the appropriateness of the injunction.

And, for similar reasons, we don't much care about the absence of circuit splits in the context of *statewide* injunctions because, contra what we saw in the case of a *nationwide* injunction, the affected citizens will have *their own* circuit decide the constitutional question on appeal—which is what the circuit courts do as a matter of course (not just with injunctions, but in *all* their published decisions).

6

*See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) ("[U]nder this Court's prior-panel-precedent rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*[.]" (cleaned up)). This last point is significant because, unlike what happens when a circuit court affirms a *nationwide* injunction—thus creating an anomaly by which one circuit binds the citizens of all the rest—a circuit affirmance of a *statewide* injunction operates just like *any other case*, binding *only* the citizens of *that* circuit.

In other words, not only is the scope of a statewide injunction far less sweeping than the scope of a nationwide injunction, but a statewide injunction doesn't, in practice, allow for nearly as much forum shopping—nor does it prevent salient legal questions from "percolating" through the federal courts. *See Georgia*, 46 F.4th at 1305. Finally, and perhaps most importantly, the losing party in a statewide injunction need not, as Justice Gorsuch rightly worried, wait indefinitely "until either one side gives up or [the Supreme] Court grants certiorari." *New York*, 140 S.Ct. at 601. We therefore disagree that a statewide injunction in this case would necessarily "encourage gamesmanship" or "frustrate foundational principles of the federal court system." *Georgia*, 46 F.4th at 1305.

## II.    A Universal Injunction Isn't Appropriate Here

Nevertheless, while statewide injunctions pose *fewer* prudential issues than their nationwide counterparts, the Defendants are right to say that, in form and function, statewide injunctions are still "universal" and thus "contradict the principle that equitable relief should be limited to the parties before the Court who have shown that they are entitled to relief[.]" Defendants' Supplemental Brief at 2. So, while the Eleventh Circuit has affirmed the use of universal injunctions in narrow circumstances, *see, e.g.*, *Georgia*, 46 F.4th at 1306; *Florida*, 19 F.4th at 1281–82, both the Supreme Court and the Eleventh Circuit have (for decades) been clear that "[i]njunctive relief should be limited in scope to the extent necessary to protect the interest of the parties," *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of

7

course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Alley v. U.S. Dep't of Health & Human Servs.*, 590 F.3d 1195, 1205 (11th Cir. 2009) ("It is well-settled that a district court abuses its discretion when it drafts an injunction that is unnecessarily broad in scope."). To borrow a phrase from Justice Robert Jackson, if there is any "fixed star" in our equity jurisprudence, it's that district courts shouldn't issue injunctions that are "more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *Georgia*, 46 F.4th at 1306 (emphasis added) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Justice Gorsuch persuasively outlined the potential perils of statewide injunctions in his concurring opinion in *Labrador v. Poe*, 144 S. Ct. 921 (2024). Joined by Justices Thomas and Alito, Justice Gorsuch agreed to stay an injunction that had "prohibit[ed] a State from enforcing any aspect of its duly enacted law against anyone"—thus going "further than necessary to provide interim relief to the parties." *Id.* at 921 (Gorsuch, J., concurring in the grant of stay). As Justice Gorsuch recounted, the plaintiffs in *Poe* were "two children and their parents" who sought to enjoin Idaho state officials from enforcing a recently passed law that would have denied the children "access to puberty blockers and estrogen[.]" *Ibid.* "[I]nstead of enjoining state officials from enforcing the law with respect to the plaintiffs and the drug treatments they sought, the district court entered a universal injunction." *Ibid.* Justice Gorsuch explained that the district court's injunction "defied [the] foundational principles" of equity jurisprudence by "issu[ing] sweeping relief" that went beyond vindicating "*the plaintiffs'* access to the drug treatments they sought." *Id.* at 923 (emphasis added). In Justice Gorsuch's view, universal injunctions—whether nationwide or statewide—bend "the foundational rule that any equitable remedy . . . must not be more burdensome to the defendant than necessary to redress the plaintiff's injuries," since they "effectively transform[ ] a limited dispute between a small number of parties focused on one feature of a law into a far more consequential referendum on the law's every provision as applied to anyone." *Id.* at 927 (cleaned up).

It's true that the alleged constitutional harm in our case is perhaps more expansive than the plaintiff-specific injuries at issue in *Poe*. *See* Plaintiff's Supplemental Brief at 15–16 ("[*Poe*] therefore did not present the structural imperatives that are present here, where a statewide injunction is necessary to maintain the federal balance and prevent the State from interfering with the federal immigration scheme."). We granted the Plaintiffs' motion to preliminarily enjoin Section 10 of SB 1718 because, according to a published decision from our Circuit, "Congress has established an 'overwhelmingly dominant federal interest in the field' of unlawfully transporting aliens," Order Granting Motion for Preliminary Injunction at 28 (quoting *Ga. Latino*, 691 F.3d at 1264), and "Section 10—by its own terms—regulates the 'knowing[ ] and willful[ ] transport[ ] into this state [of] an individual whom the person knows, or reasonably should know, has entered the United States in violation of law and has not been inspected by the Federal Government since his or her unlawful entry from another country,'" *id.* at 25–26 (quoting FLA. STAT. § 787.07(1)). But, despite these differences, Justice Gorsuch's concurring opinion in *Poe* leaned on the long-established maxim—a maxim we aren't free to ignore—that "judicial power exists only to redress or otherwise to protect against injury to the *complaining party*[.]" *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added). As the Supreme Court has said, "relief should be limited to the parties before the Court. . . . [A]lthough the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute, we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477–78 (1995); *see also Georgia*, 46 F.4th at 1306 ("Reviewing courts should also be skeptical of nationwide injunctions premised on the need to protect nonparties. Several procedural devices allow nonparties with similar interests to seek the protection of injunctive relief—class certification under Rule 23, joinder and intervention in an existing lawsuit, or even filing a new lawsuit of their own.").

The Plaintiffs ask us to "consider the practical implications" of a narrower injunction. Plaintiffs' Supplemental Brief at 8. An injunction that doesn't extend statewide, they explain, "would burden the Court" with "collateral litigation" and sow confusion because there "is no way to fully protect FWAF members and the other Plaintiffs from all enforcement action while allowing enforcement as to non-parties." *Id.* at 5, 8. These considerations are important (the Plaintiffs add) because, "[i]n crafting an injunction, a district court may appropriately consider the feasibility of equitable relief and is empowered to weigh the costs and benefits of injunctive relief and, in particular, to assess the practical difficulties of enforcement of an injunction—difficulties that will fall in the first instance on the district court itself." *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1362 (N.D. Ga. 2023) (Geraghty, J.).

While we're sympathetic to these concerns, we don't think they justify a broader injunction in our case. *First*, the mere possibility of additional (and maybe even inconsistent) litigation is a feature, not a bug, of our federal system. *See Georgia*, 46 F.4th at 1306 ("Several procedural devices allow nonparties with similar interests to seek the protection of injunctive relief—class certification under Rule 23, joinder and intervention in an existing lawsuit, or even filing a new lawsuit of their own. A district court cannot circumvent these mechanisms in the name of providing injunctive relief only for nonparties' benefit." (cleaned up)); *see also Poe*, 144 S. Ct. at 928 (Gorsuch, J., concurring in the grant of a stay) ("A return to a more piecemeal and deliberative judicial process may strike some as inefficient. It may promise less power for the judge and less drama and excitement for the parties and public. But if any of that makes today's decision wrong, it makes it wrong in the best possible ways, for good judicial decisions are usually tempered by older virtues." (cleaned up)). *Second*, the Plaintiffs' fears that they *might* suffer accidental harm absent a statewide injunction and that a more tailored injunction *might* be non-administrable are highly speculative and would require us to ignore the bedrock principle "that the remedy issued [cannot be] 'more burdensome to the defendant than

10

necessary to provide complete relief to the plaintiffs.'" *Georgia*, 46 F.4th at 1306 (quoting *Califano*, 442 U.S. at 702).[3]

Nor does the Eleventh Circuit's opinion in *Georgia Latino* compel a different result. It's true that the *Georgia Latino* panel affirmed a statewide preliminary injunction "enjoin[ing] enforcement" of a state law that *both* was "at odds with the federal immigration scheme" *and* created a credible "threat of state prosecution for crimes that conflict with federal law[.]" 691 F.3d at 1269. But none of the parties in *Georgia Latino* raised the *scope* of the preliminary injunction as an issue on appeal, so the Eleventh Circuit never addressed the question we resolve today. *See id.* at 1262–69; *cf. United States v. Roy*, 855 F.3d 1133, 1153 (11th Cir. 2017) (en banc) ("[T]he taking of testimony or other evidence that only indirectly inculpates the defendant is not a critical stage of the trial. . . . [The court] did not hold—and because the facts of that case did not present the issue it could not have held—that the taking of any testimony that does directly inculpate the defendant is a critical stage of the trial for *Cronic* purposes."); *see also Watts v. BellSouth Telecomm., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003) ("Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."). In fact, the Eleventh Circuit has never *held* that statewide injunctions are *always* the appropriate remedy when a state enacts a statute that conflicts with federal immigration laws.

The Eleventh Circuit (it's true) has suggested that statewide injunctions may be appropriate in *limited* circumstances. *Cf. Florida*, 19 F.4th at 1282 ("[C]ourts have frequently found that a nationwide injunction can be warranted in the immigration law context or when certain unconstitutionality is found.").[4] Still, we accept Justice Gorsuch's admonition that "[l]ower courts would be wise to take

---

[3] Plus, nothing prevents the parties from seeking to modify our injunction if it proves unworkable in practice or if it ends up imposing an undue burden on either (or both) of the parties.
[4] For instance, statewide injunctions continue to make sense in cases where the plaintiffs represent a statewide class. *See Georgia*, 46 F.4th at 1306 ("Several procedural devices allow nonparties with similar

heed" of the pitfalls of universal injunctions. *Poe*, 144 S. Ct. at 927 (Gorsuch, J., concurring in the grant of a stay); *see also Trump v. Hawaii*, 585 U.S. 667, 721 (2018) (Thomas, J., concurring) ("In sum, universal injunctions are legally and historically dubious."). So, while *some* of the Plaintiffs have shown that they would suffer concrete harm if Section 10 were enforced against them, *see generally* Order Granting Motion for Preliminary Injunction at 30–36, we disagree that expanding the scope of our injunction to include unidentified third-parties (many of whom may never have standing to sue and none of whom have elected to assert their claims here) would constitute a proper exercise of our jurisdiction.

### III. The Injunction Shall Apply to All Plaintiffs with Standing

Having thus determined that our injunction shouldn't apply statewide, we must now decide how far it will extend. The Plaintiffs suggest that "the injunction should prevent the enforcement of Section 10 against any Plaintiff, including all of FWAF's members." Plaintiffs' Supplemental Brief at 16. The Defendants respond that "the proper scope of relief here is at most an injunction prohibiting Defendants from prosecuting the individual Plaintiffs." Defendants' Supplemental Brief at 8.

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). As we've said, the "traditional scope of injunctive relief" requires us to delineate an injunction that's as broad as "necessary to protect the interest of the parties" but "limited to the inadequacy that produced the injury that the plaintiff has established[.]" *Georgia*, 46 F.4th at 1303 (first quoting *Keener*, 342 F.3d at 1269; and then quoting *Gill v. Whitford*, 585 U.S. 48, 66 (2018)). We've already found that three of the individual Plaintiffs (Andrea Mendoza Hinojosa, Carmenza Aragon, and Maria Medrano Rios) and FWAF have established their standing to

---

interests to seek the protection of injunctive relief—class certification under Rule 23, joinder and intervention in an existing lawsuit, or even filing a new lawsuit of their own.").

12

maintain this lawsuit. *See* Order Granting Motion for Preliminary Injunction at 13 ("As we've suggested, the conduct of the three Plaintiffs we've discussed above is at least arguably proscribed by Section 10."); *id.* at 16 ("As with [other] organizational plaintiffs . . . , the Farmworker Association has shown, through a sworn Declaration from its General Coordinator, that it's had to divert resources away from its regular activities to educate and assist affected individuals in their efforts to comply with Section 10 of SB 1718."). And it's axiomatic that an injunction should reach *all* plaintiffs who have shown that, absent injunctive relief, they will suffer a future (or ongoing) injury-in-fact. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."); *Virdi v. DeKalb Cnty. Sch. Dist.*, 216 F. App'x 867, 871 (11th Cir. 2007) ("An injunction is not lightly entered. To have Article III standing to pursue injunctive relief, even against violations of the Constitution, a plaintiff must have more than a merely hypothetical grievance: he or she must have an injury in fact that is capable of being redressed by the injunction." (citing *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983)).[5]

The Defendants object to this commonsense approach on two grounds—both unpersuasive. *First*, they say that an injunction shouldn't apply to FWAF and its members because FWAF "does not possess a cause of action to challenge Section 787.07." Defendants' Supplemental Brief at 8. This argument (*viz.*, that organizations like FWAF lack a cause of action to enjoin the enforcement of state

---

[5] *See also Rodgers v. Bryant*, 942 F.3d 451, 461–62 (8th Cir. 2019) (Stras, J., concurring in part and dissenting in part) ("The common thread was that courts of equity tailored injunctions to the particular harms that the *moving party* faced, whether during litigation or after. . . . This party-centered understanding of injunctions was also reflected in equity's requirement 'that all persons materially interested, either legally, or beneficially, in the subject-matter of a suit, are to be made parties to it, however numerous they may be.'" (cleaned up) (quoting JOSEPH STORY, COMMENTARIES ON EQUITY PLEADINGS, AND THE INCIDENTS THEREOF, ACCORDING TO THE PRACTICE OF THE COURTS OF EQUITY, OF ENGLAND AND AMERICA § 72, at 86 (Boston, Charles C. Little & James Brown 1848))).

13

laws) forms the basis of the Defendants' Motion Reconsideration, which we'll address in a separate order. For now, though, we've determined that FWAF can proceed with this lawsuit—and we won't cut them out of this injunction. At the same time, even the Plaintiffs concede that there should be *some* limiting principle to a "members-only" injunction. After all, "[i]f membership was required to avoid arrest and prosecution under Section 10, there would presumably be a rush of membership applications, potentially overwhelming the organization." Plaintiffs' Supplemental Brief at 6–7 (citing Xiuhtecutli Decl. ¶¶ 31–38). To ensure that FWAF is afforded complete relief—but mindful that an injunction shouldn't be indefinite or harmful to the plaintiffs—our injunction will apply only to persons who can verify that they were active FWAF members *as of the date of this Order. See, e.g.*, *Teche Vermilion Sugar Cane Growers Ass'n v. Su*, 2024 WL 4729319, at *3 (W.D. La. Nov. 7, 2024) ("In light of Rule 65, the Court determined that the preliminary injunction should only apply to the named Plaintiffs and their members as of the date of the injunction order, and not to future members of the Association Plaintiffs. The Court will reconsider the scope of the injunctive relief should Plaintiffs ultimately prevail on the merits of their claims.").

*Second*, the Defendants urge us to "carve out pending prosecutions from the scope of injunctive relief," adding that "the proper scope of relief here is at most an injunction prohibiting Defendants from prosecuting the individual Plaintiffs." Defendants' Supplemental Brief at 8, 10. In their view, the "Farmworker Association's presence as a plaintiff . . . does not warrant broadening the injunction to be statewide," because the "Farmworker Association does not possess a cause of action to challenge Section 787.07," *id.* at 8, and because the "Association has not established that enjoining pending prosecutions is traceable or redressable to any future injury," *id.* at 10. The Defendants thus contend that an injunction any broader than one "limited to preventing criminal prosecutions of [the individual] Plaintiffs" would be "more burdensome . . . than necessary to provide complete relief to the [P]laintiffs." *Id.* at 8 (cleaned up).

14

We disagree. FWAF has identified a direct causal connection between its injury and the alleged conduct, *see* Xiuhtecutli Decl. ¶ 38 ("I anticipate that the community impact of Section 10, including arrests and detentions, will continue to divert FWAF's resources from its core mission of strengthening farmworker communities through its different programs and normal organizing work."), and that injury *would be* redressed by an order enjoining the enforcement of Section 10, since any such injunction would allow FWAF to resume its core business activities *without* having to divert resources to address the looming threat of its members' prosecutions, *see Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1159 n.9 (11th Cir. 2008) ("If we accept the injury to be that Subsection 6 will hinder the organizations' ability to carry out their mission of registering eligible voters by forcing plaintiffs to divert time and resources needed to comply with the matching requirement, causation is apparent. An injunction against the enforcement of Subsection 6 would also redress this injury by doing away with the matching requirement, thereby freeing up the organizations to get on with their business."). By the same token, an injunction that *only* prohibits the Defendants from prosecuting the individual Plaintiffs would fail to afford "complete relief to the plaintiffs," *Georgia*, 46 F.4th at 1303, because that (more limited) injunction would neither remedy the FWAF's existing injuries nor prevent it from continuing to suffer the same injury in the future, *see* Plaintiffs' Supplemental Brief at 7–8 ("A members-only injunction would also fail to remedy FWAF's existing injuries stemming from its diversion of resources. . . . Indeed, an injunction limited to FWAF members would likely require an even greater diversion of resources to educate both members and non-members about the contours of such an injunction, the rules governing stops, arrests, and proof of membership, and how to address the inevitable mistakes noted above.").

Our preliminary injunction, in sum, will apply only to the Plaintiffs who have demonstrated their standing—the three individual Plaintiffs, the FWAF, and the FWAF's members—as of the date of this Order.

\*   \*   \*

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the preliminary injunction we issued in our Order Granting the Plaintiffs' Motion for Preliminary Injunction [ECF No. 99] is modified as follows:

1. FLA. STAT. § 787.07 is **PRELIMINARY ENJOINED**. The Defendants must take no steps to enforce FLA. STAT. § 787.07 against Plaintiffs Andrea Mendoza Hinojosa, Carmenza Aragon, Maria Medrano Rios, the Farmworker Association of Florida, and all current members (as of the date of this Order) of the Farmworker Association of Florida until otherwise ordered by the Court.

2. This preliminary injunction binds the Defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with them—who receive actual notice of this injunction by personal service or otherwise.

**DONE AND ORDERED** in the Southern District of Florida on March 11, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record